MARGARET SHIELDS ET AL.

v.

JOHN McKEE.

1. MALICIOUS PROSECUTION—JOINT LIABILITY.—Where the evidence shows that one of the suits complained of was commenced by the husband without the knowledge or concurrence of his wife, and the others were commenced by her without his knowledge or concurrence, there can be no joint liability in an action for malicious prosecution. No such liability can arise because the parties stand in the relation of husband and wife.

2. CONSPIRACY.—A conspiracy can not be proved by showing acts of the alleged conspirators done separately, but the conspiracy must be shown as an independent fact before the acts of one conspirator are admissible against the other for any purpose.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed May 31, 1882.

This was an action of trespass on the case, brought by John McKee against Margaret Shields and Patrick Shields, her husband, for malicious prosecution. It appears, that for some time prior to the commission of the grievances complained of, Margaret Shields was the proprietor of and kept a hotel in the city of Chicago, and that in July, 1880, the plaintiff became a boarder at said hotel, and continued to board there until December 13, 1880. At the time the plaintiff came to said Margaret Shields to obtain board, he brought with him certain goods and effects consisting, among other things, of a chest of carpenter's tools, and agreed, as the defendants claim, that said Margaret Shields should have a lien upon the same as security for his board.

It is claimed by the defendants, though denied by the plaintiff, that at the time the plaintiff left said hotel, he was owing a balance of $11.50 for board, and also that he left clandestinely, taking his carpenter's tools and other effects with him. Shortly afterward, an attachment against the goods and chattels of the plaintiff was sued out before a justice of the peace by defendant Patrick Shields and levied

Shields v. McKee.

on said carpenter's tools, the attachment affidavit alleging an indebtedness of $11.50 to said Patrick Shields. In the suing out and prosecution of this writ, Margaret Shields, so far as appears, took no part. Before the return day of said writ, Patrick Shields went to the State of Missouri and was absent from this State at the commencement of and during the pendency of all the several proceedings against the plaintiff, subsequently instituted by said Margaret Shields.

Said attachment suit was afterward dismissed for want of prosecution, and on the same day, Margaret Shields, claiming to act as agent of her husband, sued out another attachment against the goods and chattels of the plaintiff, alleging in her affidavit an indebtedness of $11.50 to Patrick Shields, and caused said writ to be levied on the same property. While this suit was pending, Margaret Shields also commenced two criminal prosecutions against the plaintiff and another, charging them, in one, with malicious mischief, in breaking one of her windows, and otherwise damaging her building, at the time the plaintiff left her hotel, and in the other, with larceny of said tools and other property claimed by her to have been pledged by the plaintiff as security for his board. In these proceedings the plaintiff was arrested and imprisoned, and subsequently both proceedings were dismissed for want of prosecution. The last mentioned attachment suit also being called for trial on the return day of the writ, was dismissed by said Margaret Shields, and on the same day she commenced another attachment suit against the plaintiff, alleging in her affidavit an indebtedness of $11.50 to herself, which suit, on the return day of the writ was dismissed on her motion, and shortly afterward she commenced still another attachment suit against the plaintiff, claiming an indebtedness to herself of $11.50, which suit, after being brought to trial on the evidence was also dismissed. Said Patrick Shields had no personal agency in the commencement or prosecution of either of the proceedings commenced by said Margaret Shields, nor is there any evidence tending to show that he had any knowledge of their prosecution.

At the trial, objection was made by Patrick Shields to the

admission as against him, of the record of the several proceedings above mentioned, commenced by Margaret Shields, and objection was also made by Margaret Shields to the admission of evidence against her, of the record of the attachment suit commenced by Patrick Shields. These objections were overruled by the court, and the records of all of said proceedings were permitted to be given in evidence to the jury, to which decision exceptions were duly taken.

The plaintiff in support of said ruling insists that said several prosecutions were commenced in pursuance of a previous conspiracy between Patrick Shields and his wife. The only evidence in the record bearing upon the question of such conspiracy is to be found in the following portions of the testimony of Margaret Shields given by her on cross-examination.

Q. "Did you consult with your husband before making these affidavits?"

A. "My husband was not in town."

Q. "When you made the affidavit in the criminal case?"

A. "He was not in Illinois at that time; he was in Missouri."

Q. "You swore in your affidavit that he was entitled to the possession with you to that property. I want to know whether you consulted with him before you made the affidavit?"

A. "He was not in town at that time, or in the State of Illinois."

Q. "Did you consult with him before he went out of town?"

A. "No, sir."

Q. "The property was taken, was it not, before he left the city?"

A "Yes, sir."

Q. "Did you have any talk with him about that?"

A. "At the time we had a conversation."

Q. "Now tell us what that conversation was."

A. "We conversed about it, and I told Mr. Shields that the goods were left with me as security for the board, and

Shields v. McKee.

that I considered they were mine, until such time as the board was paid, and these boys went away without paying for their board; I was justly entitled to it."

Q.   "You and he came to the belief that they ought to be arrested?"

A.   "I came to that conclusion."

Q.   "With his advice, I suppose?"

A.   "I had no other way to get my money. I didn't know where they went to. I didn't know whether they were going to Canada, or not. I didn't know anything about it. I had no other way to resort to except to attach their goods, and try to get my own money."

Q.   "It was the same night after it was taken out?"

A.   "Yes, sir. I told Mr. Shields that those goods were left with me as security for the board."

Q.   "Then tell us what your husband said."

A.   "I suppose he said he thought— I forget what he said now."

Q.   "That they ought to be arrested?"

A.   "I said that myself."

Q.   "Did he say it too?"

A.   "I don't know that."

Q.   "You don't remember what he said, do you?"

A.   "I don't remember that at all."

Q.   "You together came to the conclusion you would arrest them that night?"

A.   "I thought I would arrest all thieves, and bring them to justice."

Q.   "I understood you to say that the very evening these parties went away, you and your husband consulted over the matter. Do you say so?"

A.   "Yes, sir."

Q.   "The very same evening?"

A.   "The very same evening we found out they were gone."

The court, at the instance of the plaintiff, gave to the jury, among other instructions, the following:

4.   "In this case, if the jury believe, from the evidence, that the defendants conspired together to vex and harass the

plaintiff with groundless and malicious civil suits, and they did so vex and harass him maliciously and without probable cause, and that they caused his property to be seized and withheld from him upon attachments maliciously and falsely sworn out against him they should find for the plaintiff, and impartially and fairly assess his damages at such sum as they may deem proper and right, from all the evidence, not exceeding the damages laid in the declaration."

The jury, thereupon, found both the defendants guilty, and assessed the plaintiff's damages at $1,000, and the court, after overruling the defendants' motion for a new trial, gave judgment on the verdict in favor of the plaintiff.

Mr. WALLACE SMITH and Mr. W. I. CULVER, for appellee; cited Closson v. Staples, 42 Vt. 209; Whipple v. Fuller, 11 Conn. 586; Spaids v. Barrett, 57 Ill. 293; Lawrence v. Hagerman, 56 Ill. 68; Kindred v. Stitt, 51 Ill. 401.

BAILEY, J. The defendants, who are husband and wife, are sued jointly, for the commencement and prosecution against the plaintiff, of four attachment suits and two criminal proceedings, maliciously and without probable cause. The evidence shows beyond controversy, that, of the attachment suits, one was commenced by Patrick Shields alone, without the knowledge or concurrence of his wife, and that the other three attachment suits and the two criminal proceedings were commenced and prosecuted by Margaret Shields, in the absence of her husband, and without his knowledge or concurrence. The court, against the objection and exception of the defendants, permitted all these various proceedings to be given in evidence to the jury, and the propriety of such ruling is the principal question presented by this appeal.

It can not be pretended that the liability of either of the defendants for the acts of the other grows out of the marital relation. A wife can not be held liable, either at common law or under our statute, for the wrongful acts of her husband in which she does not participate; and whatever may have been the common law liability of the husband for the wrongful

acts of his wife, in which he does not participate, our recent statutes in relation to the rights of married women have, by implication, relieved him of that liability.     The case, therefore, is essentially the same as though defendants were persons between whom the marital relation did not exist.     Martin et. al. v. Robson, 65 Ill. 129.

The judgment is sought to be supported solely on the theory of a conspiracy between the defendants, entered into prior to the commencement of any of the suits complained of, to vex and harass the plaintiff with malicious and groundless legal proceedings, and that all the proceedings afterward commenced were in pursuance of such conspiracy.     Doubtless if the conspiracy claimed is proved, the position of plaintiff's counsel is correct, for in that case the plaintiff would be entitled to give evidence of all acts performed by either defendant in pursuance of it.     But we have examined the record in vain for evidence upon which the jury could have been justified in finding such conspiracy.

The only evidence bearing on that subject to which we are referred, or which we have been able to find, is that contained in the cross-examination of Mrs. Shields, and that, we think, wholly fails to support the theory of a conspiracy. She testifies, it is true, that after the plaintiff left her hotel, she had a talk with her husband in which she told him that the plaintiff had given her a lien on his goods as security for his board, and that he had carried said goods off and ought to be arrested, but it does not appear that her husband assented to her views, or said or did anything by way of entering into a combination with her to commence either civil or criminal proceedings against the plaintiff.     The conspiracy charged was a fact which the plaintiff was bound to show by affirmative proof, and it can not be inferred from Mrs. Shields' unwillingness or inability to disclose the part her husband took in the conversation.     She gave no evidence on that subject, and all that can be said is, that the instrumentality by which the plaintiff undertook to make this proof, failed.

Nor is the plaintiff aided in this matter by the fact that Mr.

Shields afterward commenced one suit against the plaintiff, and that after he left the State Mrs. Shields commenced several. A conspiracy can not be proved by showing acts of the alleged conspirators done separately, but the conspiracy itself must be shown as an independent fact, before the acts of one conspirator are admissible against the other for any purpose.

From what we have said it follows that the plaintiff's fourth instruction was erroneous for the reason that there was no evidence of a conspiracy upon which it could be based.

For the reasons above given, the judgment will be reversed and the cause remanded.

Judgment reversed.