MARGARET MARTIN *et al.*

*v.*

JANET ROBSON.

65   129
38a  413
65   129
142  397
143  655
65   129
49a  165
65   129
46a  108
65   129
102a  5640

1. HUSBAND AND WIFE—*husband's liability for his wife's torts.* Since the passage of the acts of 1861 and 1869, relating to the rights of married women, the husband is not liable for the torts of his wife committed during coverture, when he is not present, and in which he in no manner participated.

2. SAME—*rights of husband as to her property.* The effect of the present legislation is to change the common law rule, so that in this State the husband can not enjoy the rents and profits of his wife's real estate without her permission; and he has no control over her separate personal property, except by her consent, and he can no longer interfere with her *choses in action.*

3. SAME—*as to wife's earnings.* The product of her earnings is the exclusive property of the wife. She alone can sue for and recover, and the husband can not release them. The right to her earnings also includes the right to appropriate her own time and labor in acquiring them.

4. SAME—*duties and obligations.* As the result of the marriage vow, and a part of the contract, the wife is still bound to love and cherish the husband, and to obey him in all reasonable demands, not inconsistent with the exercise of her legal rights; to treat him with respect, and regard him at least as her equal; and he is still bound to protect and maintain her, unless she should neglect wholly her marital duties, as imposed by the common law, or assume a position to prevent their performance, and thus deprive him of her society. These duties and obligations at common law were not the result of the arrangement of their property, but of the contract of marriage and the relation thereby created.

5. SAME—*husband's liability for necessaries.* If the husband, without justifiable cause, turns away his wife, he is bound for contracts for necessaries suitable to her degree and estate. If they live together, and he will not supply her or the necessary means, she can pledge his credit for necessaries strictly; but if he provides for her, he is not bound by her contracts, unless made by his authority, or with his concurrence.

6. SAME—*rights and powers of wife.* As to the separate property of the wife, she is now the same as a *feme sole.* She need not join her husband with her in a suit to recover it, or for the trespass to it. She may even prosecute a suit against him for any unlawful interference with her property.

9—65TH ILL.

7. SAME—*personal injury to wife.* So the wife may sue alone for personal injuries, and her husband can not, without her consent, release her claims for damages, as such right of action is her property.

8. SAME—*wife may lease her real estate.* The wife may now execute a valid lease of her separate real estate without joining her husband and without his consent, and she may be sued at law upon her contracts as to her separate property.

APPEAL from the Circuit Court of Marshall county; the Hon. SAMUEL L. RICHMOND, Judge, presiding.

This was an action on the case, brought by the appellee against Margaret Martin and John Martin, her husband, to recover for certain slanderous words spoken by Margaret Martin of and concerning the appellee, imputing that the appellee was guilty of fornication. The cause was tried upon the declaration, and the plea of not guilty. Verdict for $2500, of which sum $1000 was remitted, and motion for a new trial overruled.

Messrs. BANGS & SHAW, and Mr. R. F. WINSLOW, for the appellants.

Messrs. BURNS, BARNES & ONG, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

Since the passage of the acts of 1861 and 1869, (Session Laws of 1861, 143, and of 1869, 255,) is the husband liable for the torts of the wife during coverture, committed when he was not present, and in which he in no manner participated?

Those statutes give to the wife, during coverture, the sole control of her separate estate and property acquired in good faith from any person other than her husband, and her own earnings for labor performed for any person other than her husband or minor children, with the right to use and possess the property and earnings, free from the control or interference of her husband.

In determining the intent, object and effect of these enact-
ments, it will be interesting to place, in juxtaposition, the
rights and duties, liabilities and disabilities of husband and
wife, incident to the marriage union, as they existed at com-
mon law, and the changes made by the statute.

At common law he had control, almost absolute, over her
person; was entitled, as the result of the marriage, to her ser-
vices, and consequently to her earnings; to her goods and
chattels; had the right to reduce her *choses in action* to posses-
sion, during her life; could collect and enjoy the rents and
profits of her real estate; and thus had dominion over her
property, and became the arbiter of her future. She was in
a condition of complete dependence; could not contract in her
own name; was bound to obey him; and her legal existence
was merged in that of her husband, so that they were termed
and regarded as one person in law.

As a necessary consequence, he was liable for the debts of
the wife *dum sola,* and for her torts and frauds committed
during coverture. If they were done in his presence, or by his
procurement, he alone was liable; otherwise they must be
jointly sued.

Now, he can not enjoy the profits of her real estate without
her permission. He has no control over her separate personal
property. It is not subject to his "disposal, control or inter-
ference." Language could not be more explicit. All her
separate property is "*under her sole control, to be held, owned,
possessed and enjoyed by her the same as though she was sole and
unmarried.*" He has no right to use or dispose of a horse or
a cow, without her consent. He can no longer interfere with
her *choses in action.* They are under her sole control. The
product of her labor is her exclusive property. She alone can
sue for and enjoy it. Any suit for her earnings must be in
her own name, and she may use and possess them free from
the interference of her husband or his creditors.

The language of the statute of 1869 is, "That a married
woman shall be entitled to receive, use and possess her own

earnings, and sue for the same in her own name, free from the interference of her husband."

The words, "free from the interference of her husband," apply as well to the right to receive, use and possess, as to the right to sue for, her earnings. The right, therefore, to receive and use her own earnings, uncontrolled by the husband, is conferred in express terms. The practical enjoyment of this right presupposes the right to appropriate her own time. The right to take and possess the wages of labor must be accompanied with the right to labor. If the husband can control, then the statute has conferred a barren right. If the wife can still only acquire earnings with his consent, then the statute was wholly unnecessary, for she might have done this prior to its enactment. The clear intent of the statute is, not alone to give to the wife the right to accept and use her earnings, but the right to labor, and thus acquire them.

The intention of the legislature to abrogate the common law rule, to a great degree, that husband and wife were one person, and to give to the latter the right to control her own time, to manage her separate property, and contract with reference to it, is plainly indicated by these statutes. While they do not expressly repeal the common law rule, that the husband is liable for the torts of the wife, they have made such modification of his rights and her disabilities, as wholly to remove the reason for the liability.

The rights acquired by the husband by virtue of the marriage have almost all been taken away; and the disabilities of the wife have nearly all been removed. She now controls her own estate entirely, except that, by construction of the courts, she can not convey her real estate without her husband. This, however, is solely for her protection, and to prevent the squandering of the estate. He has now only a modified tenancy by the curtesy, dependent upon a contingency, and no estate vests during the life of the wife. This is rather a shadowy estate. It is an interest which may possibly ripen into something tangible in the uncertain future. Previous to

the act of 1861, it could be sold on execution against the husband; now, the wife has the sole control of her real estate during her life, and the husband has no interest until her death. She must sue alone for breach of covenant in a deed to her. This estate, at best, is now a bare possibility. *Cole* v. *Van Riper*, 44 Ill. 58 ; *Beach* v. *Miller*, 51 ib. 206.

A liability which has for its consideration rights conferred, should no longer exist when the consideration has failed. If the relations of husband and wife have been so changed as to deprive him of all right to her property, and to the control of her person and her time, every principle of right would be violated, to hold him still responsible for her conduct. If she is emancipated, he should no longer be enslaved.

For the policy and wisdom of the legislation which has effected a change so radical, the legislature alone is responsible. The courts must guard against a construction which might prove mischievous, and result in a practical divorcement of man and wife, if such construction can be avoided.

In *Cole* v. *Van Riper*, *supra*, this court said that the legislature never could have intended, by the enactment of 1861, to loosen the bonds of matrimony, or to enable the wife, at pleasure, to effectuate a divorce *a mensa et thoro*, or to confer the power to restrict the husband to the use of a particular chair, or to forbid him to take a book from the library without her permission. We shall not insist that such unwifelike conduct can even be justified since the law of 1869.

The inquiry is therefore pertinent, what is left of the nuptial contract? What duties and obligations still exist?

As the result of the marriage vow, and as a part of the contract, the wife is still bound to love and cherish the husband, and to obey him in all reasonable demands not inconsistent with the exercise of her legal rights; to treat him with respect, and regard him at least as her equal; and he is still bound to protect and maintain her, unless she should neglect wholly her marital duties as imposed by the common law, or

assume a position to prevent their performance, and thus deprive him of her society, mar the beauty of married life, and disregard the household good.

These duties and obligations upon husband and wife were not the result of the arrangement of their property at common law, but of the contract of marriage and the relation thereby created. By the marriage she became one of his family, and he was bound to provide her a home, and necessaries there but not elsewhere. He must furnish her with necessaries, from a principle of duty and justice. 2 Kent's Com. 148.

"The duties of the wife, while cohabiting with her husband, form the consideration of his liability for her necessaries." *McCutchen* v. *McGahay*, 11 Johns. 281. This doctrine is approved by Kent in his Commentaries, 2 Vol. 146.

The argument urged to maintain the responsibility of the husband for the torts of the wife, because he may still be bound to provide necessaries, is not appropriate. Upon the marriage, at common law, his assent to her contracts for necessaries was presumed, upon proof of cohabitation. If she eloped, though not with an adulterer, the husband was not chargeable even for necessaries. But elopement did not release him from liability for her debts *dum sola*, or for her torts.

The rule at common law, as to the liability for necessaries, is, if a man, without justifiable cause, turns away his wife, he is bound for her contracts for necessaries suitable to her degree and estate. If they live together, and he will not supply her, or the necessary means, she then can pledge his credit for necessaries strictly; but if he provides for her, he is not bound by her contracts, unless there is evidence to prove his assent. He is not bound by her contracts unless they are made by his authority or with his concurrence, except he makes no provision for her. *Montague* v. *Benedict*, 3 Barn. & Cress. 631; *Montague* v. *Espinesse*, 1 Car. & Payne, 502; *Atkins* v. *Curwood*, 7 Car. & Payne, 756.

.The plain reason for the obligation was the cohabitation, or the right to enforce it, and the consequent right to her obedience and services.

Even though she lived separate from him, supported her children, and earned a salary, the party owing her had no right to pay her, after notice from the husband not to do so. He could, in such case, sue for and recover the salary. *Glover* v. *Proprietors of Drury Lane*, 2 Chitty, 117.

Now, how changed! Her earnings, except for services she may render to him and his minor children, are her exclusive property, whether living apart from or with him.

No principle is better settled, at common law, than that the husband is not liable for necessaries furnished to the wife, if she leaves him without any fault on his part. But he was responsible for her torts until a dissolution of the marriage, even in case of separation.

Where the husband and wife lived apart, and she published a libel of a third person, he was held to be answerable, notwithstanding the separation. *Head* v. *Briscol and Wife*, 5 Car. & Payne, 484.

The foundation for the liability in the two cases is different. In the one case it was based upon cohabitation, and the enjoyment of the society and services of the wife, as a necessary consequence. In the other case it rested more particularly, if not exclusively, upon the fact that the husband became the absolute owner of her personal property, and had the right to receive the rents and profits of her real estate.

It is also urged, as a reason for the continued liability of the husband for the torts of the wife, that this obligation was imposed upon him at common law, whether she was poor or wealthy, and that therefore the statutes have produced no different rule.

If she did not enrich him with property—if she did not endow him with gold—she endowed him with a nobler gift and a greater excellence. She enriched him with her society,

advised and encouraged him as one who had no separate interests, and freely gave to him her time, industry and skill. As a means of paying her debts and damages for her torts, her counsel and earnings might be as important as her accumulated property.

The distinction between the liability of the husband for the contracts of the wife before marriage, and for her torts during marriage,—as for slander uttered by her alone,—is too dim to be easily seen. He was made liable for her debts at the period of marriage, because the law gave to him all her personal estate in possession, and the power to recover her personal property in action. Bright's Hus. & Wife, 2 Vol. p. 2.

He was bound to pay her indebtedness because he adopted her and her circumstances together. Black. B. 1, 443.

The law made him liable to the debts to which he took her subject, because he acquired an absolute interest in her personal property, had the receipt of the rents and profits of her real estate during coverture, and was entitled to whatever accrued to her by her industry or otherwise, during the same period. Steph. Nisi Prius, Vol. 1, p. 726.

The reason for the liability, according to some authorities, is that, by the marriage, the wife was deprived of the use and disposal of her property, and could acquire none by her industry, as her person and earnings belonged to the husband. Tyler on Infancy and Cov. sec. 216.

The same author, after declaring the husband's liability for the debts and torts of the wife, says: " The reason assigned for such liabilities at common law is, that he was entitled to the rents and profits of the wife's real estate during coverture, and to the absolute dominion over her personal property in possession." Sec. 233.

The common law was never guilty of the absurdity of imposing obligations so onerous without conferring corresponding rights. Hence, besides the rights of property, the legal pre-eminence was exclusively vested in the husband. He was

answerable for her misbehavior, and hence had the right of restraint over her person.   Black. B. 1, 444.

Lord Kaimes, in his Sketches, says: "The man bears rule over his wife's person and conduct; she bears rule over his inclinations; he governs by law, she by persuasion."

In the matter of Cochrane, 8 Dowl. P. C. 632, the wife was, upon the hearing of a writ of *habeas corpus*, restored to her husband upon the principle that she was under his guardianship, and that the law entitled him, "for the sake of both, to protect her from the danger of unrestrained intercourse with the world, by enforcing cohabitation and a common residence."

So long as the husband was entitled to the property of the wife and to her industry, so long as he had power to direct and control her, and thus prevent her from the commission of torts, there was some reason for his liability.   The reason has ceased.   The ancient landmarks are gone.   The maxims and authorities and adjudications of the past have faded away. The foundations hitherto deemed so essential for the preservation of the nuptial contract, and the maintenance of the marriage relation, are crumbling.   The unity of husband and wife has been severed.   They are now distinct persons, and may have separate legal estates, contracts, debts and injuries.

To this conclusion have all the decisions of this court tended.   So far as the separate personal property of the wife is concerned, she is now the same as a *feme sole.*   She need not join her husband with her in a suit to recover it, or for the trespass to it, as her rights only are affected, and she must sue alone for any invasion of them.   She may even prosecute a suit against her husband for any unlawful interference with her property, contrary to her wishes.   *Emerson* v. *Clayton,* 32 Ill. 493.

The right of action for personal injuries to the wife is property.   She may sue alone for the recovery of damages for such injuries, and the husband can not, without her consent, release them.   *C. B. & Q. R. R. Co.* v. *Dunn,* 52 Ill. 260.

In the same case it is said that she can maintain, in her own name, an action for slander of her character. If she alone is entitled to receive, and appropriate to her own use, damages recovered for slander of herself, she should answer for her slander of others.

Until the law of 1869, this court adhered to the common law rule, that the husband was responsible for the debts of the wife contracted before marriage. It was repeatedly declared that the liability rested, not only upon the fact that the husband, upon the marriage, became the owner of the wife's personal property, when reduced to possession, and of a life estate in her realty, but upon the ground that he was entitled to the entire proceeds of her time and her labor, and that, notwithstanding the law of 1861, he was still entitled to her earnings. *Conner* v. *Berry*, 46 Ill. 371; *McMurtry* v. *Webster*, 48 ib. 123.

The last decision was made in 1868. Then followed the law of 1869.

In the first adjudication made under it, it was held that, as she now owned separate property, and enjoyed her own earnings, she must pay the costs incurred in attempting to maintain her rights. *Musgrove* v. *Musgrove*, 54 Ill. 186.

In *Howarth* v. *Warmser*, 55 Ill. 48, the husband was declared to be discharged from his former liability to pay the debts of the wife contracted before marriage, by force of the legislation under consideration.

A married woman may now be sued at law upon her contracts as to her separate property. *Cookson* v. *Toole*, 59 Ill. 515.

She may now execute a valid lease of her separate real estate without joining her husband, and without his consent. *Parent* v. *Callerand*, 64 Ill. 97.

So diverse are the rights and interests, the duties, obligations and disabilities of husband and wife now, that it would be most unreasonable to hold him still liable for the torts committed without his presence and without his consent or approbation.

If he is not bound to pay her debts, why should he be responsible for her torts? When the ground-work is gone as to one, it is gone as to the other, and the structure of the past must fall before the innovations of the present.

She is now, to a very great extent, independent of him, and is clothed with rights and powers ample for her own protection; and so far as her separate property is concerned, is responsible for her debts and contracts, with reference to it. They are not one, as heretofore. They are one in name, and are bound by solemn contract, sanctioned by both divine and human law, to mutual respect; should be of the same household, and one in love and affection.

But a line has been drawn between them, distinct and ineffaceable, except by legislative power. His legal supremacy is gone, and the sceptre has departed from him.

She, on the contrary, can have her separate estate; can contract with reference to it; can sue and be sued, at law, upon the contracts thus made; can sue, in her own name, for injury to her person and slander of her character, and can enjoy the fruits of her time and labor free from the control or interference of her husband.

The chains of the past have been broken by the progression of the present, and she may now enter upon the stern conflicts of life untrammelled. She no longer clings to and depends upon man, but has the legal right and aspires to battle with him in the contests of the forum; to outvie him in the healing art; to climb with him the steps of fame, and to share with him in every occupation. Her brain and hands and tongue are her own, and she should alone be responsible for slanders uttered by herself.

Our opinion is, that the necessary operation of the statutes is to discharge the husband from his liability for the torts of the wife, during coverture, which he neither aided, advised nor countenanced.

The judgment is reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SHELDON, dissenting: I do not assent to the judicial repeal of the old rule of the law, that the husband is liable for the torts of the wife committed during coverture.

The assumed foundation of the rule is not all removed yet. A part of it, to-wit, that whatever accrues to the wife by her labor belongs to the husband, for the most part, yet remains. The act which entitles a married woman to her earnings, expressly denies to her any right to compensation for any labor performed for her husband or minor children.

Of this description chiefly are the services of married women; any other are exceptional.

As to the husband's right to the services of his wife being one of the assigned reasons of his liability for her acts and obligations, see 2 Bac. Abr. 33, title Baron & Feme (F); Tyler on Infancy and Coverture, 333.

But are these assumed reasons of the husband's liability, namely, his rights in the wife's property and to her labor, the sole ground of the liability?

Blackstone lays it down that, "By marriage, the husband and wife are one person in law.          *          *          Upon this principle of a union of person in husband and wife depend almost all the legal rights, duties and disabilities that either of them acquire by the marriage." 1 Black. Com. 441-2.

"If the wife be indebted before marriage, the husband is bound afterwards to pay the debt, for he has adopted her and her circumstances together." Id. 442-3.

Because the legislature has seen fit to interfere with this unity of person, so far as to allow the wife the enjoyment of her separate property, and to have her earnings to a limited extent, it does not follow that the courts should annul it in all other particulars.

Were it a question before the body whose province it is to alter the law, reasons of public policy might suggest themselves to the legislative mind, to let the rule making the husband answerable for his wife's misbehavior remain undisturbed, as established in the wisdom of the common law.

One remedy, which our law has provided for torts, is imprisonment on execution. But a wife is not liable to be imprisoned for a private wrong without her husband. 2 Kent's Com. 149; 3 Black. Com. 413; Reeve's Dom. Relations, 145.

This remedy, then, will be unavailing where a wife is a tortfeasor, if the husband be exempted from liability.

As the acquisitions of the joint industry of husband and wife belong to the former, we may expect it to be the exception, rather than the rule, where there will be found separate estate belonging to the wife, to be reached by execution.

This will make the remedy, by recovery of damages by suit against the wife alone, of little worth.

Thus the abrogation of the law in question leaves the party who may receive injuries at the hands of a married woman practically remediless. It will so be that she, in most instances, may commit private wrongs with legal impunity, and wives will be made, as it were, licensed wrongdoers. A weakening effect will be produced in the respect of family government, which is a powerful aid to that of the State, in the maintenance of civil order.

There will no longer be the motive of pecuniary interest on the part of the husband to induce him to exercise a salutary influence in promoting good conduct in the wife, and in restraining her from the commission of wrongs.

As bearing upon the subject in hand, the following remarks of Lord Chancellor TALBOT, in the case of *Heard* v. *Stamford*, 3 Peere Williams, 410-11, are not unworthy of regard : "I do not see how anything less than an act of Parliament can alter the law. * * * If the law, as it now stands, be thought inconvenient, it will be a good reason for the legislature to alter it; but till that is done, what is law at present must take place."

Enough of uncertainty is being brought into our laws by the regularly ordained law-making power in the exercise of its functions. The evil of the law's uncertainty is aggravated

where the continuance of the ancient principles of the law is made dependent on mere judicial discretion.

Mr. JUSTICE SCOTT: I concur with Mr. JUSTICE SHELDON.

Mr. JUSTICE BREESE: I concur in the views expressed by Mr. JUSTICE SHELDON.