LAVINA NORRIS v. MARSHA CORKILL, *et al.*

SLANDER — *Husband, when not Liable.*  In Kansas, the husband is not liable for the slanderous words spoken by his wife, when he is not present and in which he in no manner participates.

*Error from Sedgwick District Court.*

ACTION for slander, brought by *Lavina Norris* against *Marsha Corkill* and *T. D. Corkill.*   The petition (court and title omitted) is as follows, to wit :

"The plaintiff, Lavina Norris, complains of the defendants, Marsha Corkill and T. D. Corkill, and for cause of action states, that the said Marsha Corkill and T. D. Corkill are husband and wife, and were so at the time of the alleged grievances hereinafter mentioned ; that on or about the 23d day of November, 1883, at and in the county of Sedgwick, state of Kansas, the defendant Marsha Corkill, intending to injure this plaintiff in her good name, fame and credit, and to bring her into public scandal and disgrace, and to cause it to be suspected and believed by her neighbors and other citizens of the vicinity that the plaintiff was guilty of the offenses and misconduct hereinafter mentioned and charged upon her, in a certain discourse which said defendant Marsha Corkill [ in the presence and hearing ] of diver  persons, falsely and  maliciously spoke of the plaintiff the d ....matory words following, that is to say, (having immediately previous thereto called one Ella Daugett a whore).: 'What better are you?' (meaning the plaintiff,) ' you are nothing but an old whore yourself ; we don't keep the house that you do ;' ( meaning a house of ill-fame ; ) 'you pretend to be a good religious woman, don't you?' (spoken in an ironical manner, and intended to cast upon the plaintiff a disreputable character.)  By means of the speaking of which false, malicious and defamatory words, the plaintiff has been and is greatly injured in her good name and credit, and brought into public scandal and disgrace among her neighbors and the public.

" Wherefore, the plaintiff, Lavina Norris, prays judgment against the defendants, Marsha Corkill and T. D. Corkill her husband, for the sum of $5,000 damages, together with costs of this suit."

The defendant *T. D. Corkill* demurred to the petition as not stating facts sufficient to constitute a cause of action against him. At the February Term, 1884, the court sustained the demurrer and dismissed the case as to *T. D. Corkill*, to which ruling the plaintiff excepted, and brings the case here.

*G. W. C. Jones*, and *O. H. Bentley*, for plaintiff in error.

*Stanley & Wall*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The question presented in this case is, whether the husband is liable for the slanderous words spoken by his wife when he is not present and in which he in no manner participates. The rule of the common law makes the husband liable for the torts of his wife committed during coverture. The reason assigned for this liability is, that the husband is entitled to the rents and profits of the wife's real estate during coverture, and to the absolute dominion over her personal property in possession. Another ground of this liability at common law, sometimes given, is that the wife, by her marriage, is entirely deprived of the use and disposal of her property and can acquire none by her industry; that her person, labor and earnings belong unqualifiedly to the husband. (Reeves's Domestic Relations, 3; Tyler on Infancy and Coverture, § 233.)

Again, the husband by common law might give the wife moderate correction, for, as he was to answer for her misbehavior, the law thought it reasonable to intrust him with this power of restraining her by domestic chastisement in the same moderation that a man is allowed to correct his apprentices or children, for whom the master or parent is also liable in some cases to answer. (1 Blackstone's Com., Wendell's ed., 444, 445.)

Under the provisions of our statute, the reasons assigned for the liability of the husband for the torts of his wife no longer hold good, and therefore, in our opinion, under the

changes made by the statute, the liability no longer exists. It is a part of the common law that where the reason of the rule fails, the rule fails with it.

At common law the husband had control almost absolute over the person of the wife; he was entitled, as the result of their marriage, to her services, and consequently to her earnings; to her goods and chattels; had the right to reduce her choses in action to possession during her life; could collect and enjoy the rents and profits of her real estate, and thus had dominion over her property and became the arbiter of her future. She was in a condition of complete dependence; could not contract in her own name; was bound to obey him, and her legal existence was merged in that of her husband, so that they were termed and regarded as one person in law. (*Martin v. Robson*, 65 Ill. 129; Tyler on Infancy and Coverture, ch. 19, §§ 216–233.)

Under the statute,

" The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits or proceeds thereof, and any real, personal or mixed property which shall come to her by descent, devise, or bequest, or the gift of any person except her husband, shall remain her sole and separate property, notwithstanding her marriage, and not be subject to the disposal of her husband or liable for his debts." (Comp. Laws of 1879, ch. 62, § 1.)

"A married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property, and enter into any contract with reference to the same, in the same manner, to the same extent and with like effect, as a married man may in relation to his real and personal property." (§ 2 of ch. 62, *supra.*)

"Any married woman may carry on any trade or business, and perform any labor or services, on her sole and separate account; and the earnings of any married woman from her trade, business, labor, or services, shall be her sole and separate property, and may be used and invested by her in her own name." (§ 4 of ch. 62, *supra.*)

In addition, § 3 of said chapter provides that a woman may, while married, sue and be sued in the same manner as if she

were unmarried. Therefore it is not true, under the existing statute, that the wife, by her marriage, is deprived of the use and disposal of her property; nor is she prohibited from acquiring property by her own industry. It is not true under the statute, that the personal property of the wife passes to the husband; nor is he entitled to the rents and profits of her real estate during coverture; nor has he any dominion over her personal property, her labor, or her earnings. If she so desires, they are unqualifiedly her own, and he cannot interfere with them.

Again, in this state, the common-law power of correction of the wife by the husband is no longer tolerated. Under the common law, the married woman's legal existence was almost entirely ignored. She was sunk into almost absolute nonenity, and rested in almost total disability; but all of this has been changed by the statute, and to-day in our state, "her brain and hands and tongue are her own, and she should alone be responsible for slanders uttered by herself." (*Martin v. Robson*, supra.) Our conclusion is that the provisions of our statute change the common-law rule, and thereby discharge the husband from liability for the torts of the wife committed when he is not present and with which he has no connection. In this state the wife stands upon an equality, in all respects, with the husband. She is alone responsible for her contracts, and should be alone responsible for her words and her acts.

We have examined the various authorities conflicting with these views, but owing to the provisions of our statute we are not inclined to follow them, and therefore think it unnecessary to refer to them.

The judgment of the district court will be affirmed.

All the Justices concurring.