WILLIAM PETT–MORGAN v. WILLIAM KENNEDY and Wife.[1]

Nov. 5, 1895.

Nos. 9354—(44).

**Liability of Husband for Slander by Wife.**

The common-law rule which holds a husband liable in damages for slanderous words uttered by his wife, although he is not present, and in which he has not participated in any manner, has not been abrogated in this state by the passage of the statutes relating to married women.

**Slander—Charging Drunkenness.**

The words alleged in the complaint as having been spoken of and concerning plaintiff were as follows: "He has been drunk throughout Thanksgiving week. He has not retired any night during that week other than in a state of drunkenness. He has drunken people in his room. He gets people in his room and makes them drunk. He was drunk during the early hours of the morning after Thanksgiving." These words involved moral turpitude on plaintiff's part, as well as charging him with the commission of an indictable offense. *Held*, that they were slanderous per se.

Appeal by defendant William Kennedy from an order of the district court for Ramsey county, Otis, J., overruling his demurrer to the complaint. Affirmed.

*John L. Townley* and *Theodore M. Holland*, for appellant.

The common-law liability of a husband for his wife's torts was by necessary implication abrogated by Pub. St. 1858, c. 61, § (106); Martin v. Robson (Freeman) 65 Ill. 129; Norris v. Corkill, 32 Kan. 409, 4 Pac. 862; Bovard v. Kettering, 101 Pa. St. 181, 184; Harris v. Webster, 58 N. H. 481. Such liability having been abolished, nothing short of a positive re-enactment could revive it. G. S. 1878, c. 69, § 6, was not such a re-enactment; nor was G. S. 1866, c. 69, § 5. See Quilty v. Battie, 135 N. Y. 201, 32 N. E. 47; Rowe v. Smith, 45 N. Y. 230; Fiske v. Bailey, 51 N. Y. 150; Baum v. Mullen, 47 N. Y. 577; Fitzgerald v. Quann, 62 How. Pr. 331, 109 N. Y. 441, 17 N. E. 354. Laws 1869, c. 56, § 6 (G. S. 1894, § 5536), is unconstitutional, for the reason that the subject was not expressed in the title of the act. Sutherland, St. Const. p. 94, § 87; Mississippi & R. R. R. Co. v. Prince, 34

[1] Reported in 64 N. W. 912.

Minn. 79, 24 N. W. 361; Matter of Application of Paul, 94 N. Y. 496, 506; In Matter of Sackett Street, 74 N. Y. 95. This section is also repugnant to the preceding sections of the act, and particularly to section 2. See, also, Laws 1887, c. 207 (G. S. 1894, § 5530). The words set out in the complaint are not actionable per se. See Holston v. Boyle, 46 Minn. 432, 49 N. W. 203; Cooley, Torts, 204, 205; Winchell v. Argus Co., 69 Hun, 354, 23 N. Y. Supp. 650; Pollard v. Lyon, 91 U. S. 225. The words must charge an indictable offense, involving moral turpitude and subjecting the person to infamous punishment. Newell, Defam. S. & L. 84; Cooley, Torts, p. 195; Pollard v. Lyon, supra; Redway v. Gray, 31 Vt. 292. So far as appears from the complaint, plaintiff was charged with misdemeanor punishable with a fine or imprisonment commutable to a fine. This is not an indictable crime, punishable with infamous punishment. Buck v. Hersey, 31 Me. 558; Warren v. Norman, Walk. (Miss.) 387; O'Hanlon v. Myers, 10 Richardson (S. Car.) 128; Broughton v. McGrew, 39 Fed. 672; Lemons v. Wells, 78 Ky. 117. The imputation does not involve moral turpitude. Seery v. Viall, 16 R. I. 517, 17 Atl. 552; Townshend, Slander & L. (4th Ed.) 163 et seq.

*Frank P. Hopkins* for respondent.

Acts similar to our married women act have been enacted in most of the states, and it has been held universally, except in Illinois, Kansas and New Hampshire, that these acts do not abrogate the common-law rule of the husband's liability for his wife's torts. Stewart, Husband & W. §§ 14, 15, and cases; Wheeler & W. M. Co. v. Heil, 115 Pa. St. 487, 8 Atl. 616; Fitzgerald v. Quann, 33 Hun, 652; affirmed, 109 N. Y. 441, 17 N. E. 354; Choen v. Porter, 66 Ind. 194; Ferguson v. Brooks, 67 Me. 251; Kowing v. Manley, 57 Barb. 479; Fowler v. Chichester, 26 Oh. St. 9; McQueen v. Fulgham, 27 Tex. 464; McElfresh v. Kirkendall, 36 Iowa, 224; Zeliff v. Jennings, 61 Tex. 458; Luse v. Oaks, 36 Iowa, 562; Seroka v. Kattenberg, 55 Law J. (N. S.) Q. B. D. 375; 23 Cent. Law J. 364. See, also, Dean v. Metropolitan E. Ry. Co., 119 N. Y. 540, 23 N. E. 1054. The words charged impute a crime. St. Martin v. Desnoyer, 1 Minn. 25 (41); West v. Hanrahan, 28 Minn. 385; Brooker v. Coffin, 5 Johns. 188. The charge involved moral turpitude. Wright v. Paige, 36 Barb. 438; Hoag v. Hatch, 23 Conn. 585; Todd v. Rough, 10 S. & R. 18; Torbitt v. Clare, 9 Ir.

L. R. 86; Perdue v. Burnett, Minor (Ala.) 138; Cheadle v. Buell, 6 Ohio, 67; Buckley v. O'Niel, 113 Mass. 193; Halley v. Gregg, 74 Iowa, 563, 38 N. W. 416; Geary v. Bennett, 53 Wis. 444, 10 N. W. 602; Davis v. Carey, 141 Pa. St. 314, 21 Atl. 633; Brown v. Nickerson, 5 Gray, 1.

COLLINS, J. The paramount question presented by this appeal is whether a husband is liable for slanderous words uttered by his wife when he is not present, and in which he has not participated in any manner,—in other words, has the common-law rule which makes the husband answerable in damages for the torts of his wife during coverture been abrogated by statute? Counsel for appellant does not claim that this rule has been wiped out by direct enactment, but earnestly insists that this is the inevitable result of legislation respecting married women and their property, their and its legal status. To determine this question, we are required to examine statutory enactments from the days of territorial legislation, keeping in mind the well-settled rules of construction that the common law will be held no further abrogated than the clear import of the language used in the statutes requires, and that an intention to change the common law will not be presumed from doubtful statutory provisions.

From the examination, we find that the earliest of our statutes relating to married women in their property, and in any way changing the common-law rules which theretofore prevailed, is found in Rev. St. 1851, c. 71, § 105,—territorial legislation. This section appears in a chapter entitled "Issues, and the Mode of Trial," and as a part of the provisions respecting the issuance, levy, and satisfaction of executions in civil proceedings; and it seems to be a rearrangement and enlargement of the terms of chapter 375, Laws N. Y. 1849. We are unable to say more than this of its origin. It provided that all real or personal estate acquired by a female before her marriage, or to which she became entitled after marriage by inheritance, gift, grant, or devise, should be and continue hers after marriage, not liable for her husband's debts or liabilities, but liable for all of her debts contracted before marriage. We need not specially refer to the provisos, as they do not bear upon the question in hand. In Pub. St. 1858, this section, with a proviso added in 1858 (of no consequence here), appeared as section 106, c. 61, which chapter was also entitled

"Issues, and the Mode of Trial." It is further to be noticed that it still retained its position among the provisions regulating the issuance, levy, and satisfaction of executions upon judgments in civil proceedings. While this statute was in force, it was assumed by this court that the common-law rule of a husband's liability still prevailed. Brazil v. Moran (1863) 8 Minn. 205 (236).

By G. S. 1866, c. 122, all of the legislation we have referred to was expressly repealed; and, in place thereof, there was enacted chapter 69, entitled "Married Women," which radically changed the status of married women, and greatly enlarged their rights, powers, duties, and liabilities. This was the first law upon the subject after statehood. The first section provided when and how married women might hold property in their own right, not to be disposed of without the consent of their husbands; the record of a schedule of the property owned by them when married being necessary to protect it as against their husband's creditors. The next three sections are not pertinent to this discussion, but, by the fifth, provision was made for the transaction of any business or trade by a wife in her own name and for her own benefit when abandoned by her husband, or in case he neglected to properly care for his family. All contracts made by the wife in the usual course of the business or trade were declared to be as valid and binding upon her as if she were sole, and she was to be free from all interference by her husband and his creditors in relation to the business or trade. To this section was appended a proviso "that the husband shall not be liable for any contract, default or tort of the wife made, done or incurred in the course of transacting such business or trade." Among the provisions of this chapter is one to the effect that a married woman may be sued upon any contract made or wrong committed before her marriage, the same as if she were single.

In the order of legislation, we now come to Laws 1869, c. 56, now incorporated into G. S. 1894 as section 5531 et seq.; and this enactment entirely superseded the law of 1866, supra. By this statute, further innovations were introduced, and again were the rights, powers, and liabilities of a married woman extended and enlarged, and she was expressly charged with personal liability for her torts; and it was enacted that the husband should not be held for her debts or contracts. Then, as if to emphasize the matter, and place the legislative intention beyond all doubt, it was provided (section 5536) that

nothing in the act should be construed as exempting a husband from liability for torts committed by the wife.

Counsel for appellant have not called our attention to any other legislation which, in their opinion, is pertinent, except Laws 1887, c. 207 (G. S. 1894, § 5530), and of that we shall hereafter speak; nor have we been able to discover any, and we are justified in asserting that there is none. The argument of counsel is mainly rested upon an application of the maxim, "Cessante ratione legis, cessat ipsa lex," to the territorial legislation found in Rev. St. 1851, c. 71, with the amendments in Pub. St. 1858, c. 61. Commenting upon the subsequent enactment (G. S. 1866, c. 69), and especially that part of it which absolves the husband from liability for a tort committed by the wife in the course of transacting a business or trade for herself, they argue that it cannot be allowed to have the effect of preventing the prior legislation or the remaining sections of chapter 69 from having its and their legitimate and natural result; namely, of relieving the husband from the burden imposed at common law. And, referring to the act of 1869 (now found in G. S. 1894), they insist that, if the earlier statutes had the force and effect claimed for them,—had actually changed the rule,—the fact that the legislature which incorporated section 5536 into the law did not comprehend the situation and appreciate what had theretofore been accomplished is of no consequence, and that nothing less than a positive re-enactment of the common-law rule upon the subject could overcome the effect of the prior statutes.

It is evident from the provision found in G. S. 1866, c. 69, exempting the husband from liability for all torts committed by the wife in the course of her separate business transactions, that it was then understood by the legislators that the common-law rule was still in force. If this had not been the understanding, and if it had not been the legislative intent to continue the liability as to other torts, this particular feature of the law would not have appeared. It is certain that there would have been no exemption from certain torts if it had been supposed that, under the earlier statutes, the husband had been absolved from all, and such legislation would have served no purpose whatsoever. The same thing can be said of the act of 1869, and with greater force, for in that act the legislature expressly provided in one section that the husband should no longer be liable for the wife's debts or contracts, not mentioning torts at all, and in another it spe-

cifically declared that the prior sections of the statute should not be construed as exempting husbands from the common-law liability. Again do we find emphatic expression of the legislative understanding and its purpose and intent. We do not speak of the legislative understanding of the scope of some prior statutes because it can be allowed to control such statutes, but simply in connection with the intent and purpose of the legislatures enacting the laws of 1866 and 1869. The intent of both of these statutes is exceedingly clear; and that, believing the common-law rule still in existence, it was the fixed purpose of the lawmakers to retain it, is obvious.

We are now brought to a consideration of the statute of 1851, which, in so far as affects the present question, stood unchanged until 1866. It is to be observed that Rev. St. 1851, c. 71, § 105, was not passed as a "Married Woman's Act," as were its successors, and that it simply appeared among statutory provisions regulating procedure upon executions in civil actions. Its design was to protect the property of the married woman from seizure to satisfy a husband's debts. It did not purport to confer upon the wife any new duties, nor did it grant any rights not theretofore belonging to her, except as it declared in few words that her real and personal estate acquired before marriage by her personal industry, or before or after marriage by inheritance, gift, grant, or devise, should remain her own after marriage, and that none of it should be subjected to seizure to satisfy her husband's debts, engagements, or liabilities. She was prohibited from disposing of such property during coverture without the consent of her husband, except as might be ordered by the district court. The object in view, and what was designed by the legislature, was to protect the wife's property from her husband's creditors. She was not empowered by this statute to enter into contracts as if she were unmarried. It gave her the right to hold property, not as a feme sole, but as if it had been settled to her own separate use as a feme covert. The disabilities imposed upon the wife at common law were not removed except in one respect. There was no general removal, as has been the express purpose and result of more recent legislation throughout this country. The right of the wife to retain the ownership of such real and personal estate as was hers at marriage, and such as might come to her during coverture by inheritance, gift, grant, or devise, was distinctly declared; but there was nothing whatever to indi-

cate that the husband should no longer be held liable for his wife's torts. While the statute emancipated the woman in respect to her property, it did not emancipate the man from the duties and obligations assumed by him upon marriage.

In the statutes of 1851, regulating pleadings or relating to parties, nothing can be found which suggests or requires any change where an action is brought based upon a tort committed by the wife. Attention has been specially called to the fact that upon statutes changing the rights, duties, powers, and obligations of married women, wholly silent as to a removal of the husband's liabilities, it has been held that they must be construed as absolving the latter from liability for the torts of their wives. Martin v. Robson, 65 Ill. 129; Norris v. Corkill, 32 Kan. 409, 4 Pac. 862. The conclusion reached in these cases is based upon the maxim, before mentioned, "The reason of the law ceasing, the law itself ceases." But an examination of the statutes referred to in these cases will show that they are much broader than the one we are now considering. Again, the current of authority is opposed to the views expressed in these decisions, even in jurisdictions where statutes have been very sweeping, and have completely emancipated the wife and her property from the control or interference of her husband. Without elaborating, we cite some of the cases: Kowing v. Manley, 57 Barb. 479; Fitzgerald v. Quann, 33 Hun, 652, affirmed 109 N. Y. 441, 17 N. E. 354; Quick v. Miller, 103 Pa. St. 67; Choen v. Porter, 66 Ind. 194; Ferguson v. Brooks, 67 Me. 251; McElfresh v. Kirkendall, 36 Iowa, 224; Zeliff v. Jennings, 61 Tex. 458. See, also, Seroka v. Kattenberg, 55 Law J. Q. B. 375. We are convinced that so radical a change of the common law cannot be upheld from the mere fact of the enactment of 1851, and that the language found in the married woman's acts of 1866 and 1869 plainly and conclusively refutes the proposition that by either the prevailing rule as to the husband's liability was abrogated.

There is nothing whatever in the claim of counsel that section 6, c. 56, of the law of 1869 (G. S. 1894, § 5536), is unconstitutional, because it was legislation upon a subject not expressed in the title of the act itself. But, if this fact really possessed merit, it would be of no benefit to appellant, the reason clearly appearing in what has already been said.

We have heretofore adverted to G. S. 1894, § 5530,—the law of

1887. Counsel urge that by reason of the language, "Women shall retain the same legal existence and legal personality after marriage as before," the married female must alone be held responsible for her torts. We should feel gratified and relieved if the purpose and mission of this piece of legislation could be discovered, but it has no bearing upon the question now before us. We are willing to admit that its author, and possibly the legislature, intended to confer upon married women some great blessing in the way of additional rights, but it does not follow that man was to be relieved of burdens previously fastened upon him. We suspect that, speaking in a general way, an exactly opposite intention was in the mind of, at least, the author. Certain it is that, by the legislation of 1887, the husband was not absolved from his common-law obligation, and to construe the act as urged by counsel would prove a startling innovation. It would undoubtedly be opposed to the spirit of what was said in Althen v. Tarbox, 48 Minn. 18, 50 N. W. 828, and Kroessin v. Keller, 60 Minn. 372, 62 N. W. 438. Finally, on this point, we have to say that perhaps counsel are right when asserting that the common-law rule should be wiped out of existence, and that, in the present condition of things, it ought not to be tolerated for a moment. The remedy is within easy reach, however, and the appeal must be to the legislature, not to the courts.

It is further contended in appellant's behalf that the words set out in the complaint as those spoken by Mrs. Kennedy are not actionable per se. They were as follows: "He has been drunk throughout Thanksgiving week. He has not retired any night during that week other than in a state of drunkenness. He has drunken people in his room. He gets people in his room and makes them drunk. He was drunk during the early hours of the morning after Thanksgiving." Drunkenness is a crime under the laws of this state. G. S. 1894, § 6949. It is punishable by indictment. It was held in St. Martin v. Desnoyer, 1 Minn. 131 (156), and again in West v. Hanrahan, 28 Minn. 385, 10 N. W. 415, that words spoken of another which, when taken in their plainest and most natural sense, and as they would be ordinarily understood, obviously import the commission of a crime punishable by indictment are actionable per se. It is barely possible that, in view of the many indictable offenses in this state under the present statutes, some of which reflect very slightly, if at all, upon the moral character of a person indicted, the proposition so flatly laid

down in these two cases will have to be qualified; but here the misbehavior charged in the words alleged to have been used by the defendant's wife was not only indictable, but involved the element of moral turpitude, and was such as to injuriously affect the social standing of the plaintiff. In view of the moral sentiment of the people of this state on the subject of drunkenness, so pronounced as to lead to the enactment of the Scheffer law in 1889, we do not hesitate to say that moral turpitude is involved in the charge that a man has been getting other people drunk, and has himself been on a drunken debauch lasting for a week. The words uttered, according to the complaint, were actionable per se.

Order affirmed.