# CHRISTENSEN v. McCANN ET UX.
(No. 1576; Dec. 10, 1929; 282 Pac. 1061)

102

For the defendants and appellants there was a brief by *H. S. Ridgely,* of Cheyenne.

For the respondent, there was a brief and oral argument by *H. B. Henderson, Jr.,* of Cheyenne.

RINER, Justice.

This is an appeal from a judgment of the District Court of Laramie County obtained by the respondent Nels Christensen, hereinafter mentioned as the "plaintiff," against the appellants Bernard P. McCann and Mrs. Bernard P. McCann, subsequently generally referred to as the "defendants" or by their respective names. The action arose in consequence of an automobile collision between a Buick coupe owned and driven by Mrs. McCann and a Ford delivery truck, owned and driven by the plaintiff, which occurred at the intersection of Pershing Boulevard and Warren Avenue in the city of Cheyenne. Plaintiff and Mrs. McCann in their pleadings each charged the other with negligence and claimed the damages each vehicle suffered by reason of the collision. Bernard P. McCann filed a general denial of the allegations of plaintiff's petition.

The trial was to the court, culminating in the judgment heretofore mentioned, wherein findings were made generally in favor of the plaintiff and against both of the defendants. The court also specifically found that the collision and the injuries to plaintiff's truck were caused by the negligent and careless driving of the defendant

Mrs. Bernard P. McCann, and that the plaintiff's truck had entered the intersection of Pershing Boulevard and Warren Avenue before her car did, and that said truck was approximately in the center of the intersection of these streets before her car came into said intersection. The court further found that Mrs. Bernard P. McCann is the wife of Bernard P. McCann and that judgment should be entered against them both.

The evidence of the parties themselves and their witnesses was in many respects conflicting concerning the facts upon which the findings of the trial court relating to negligence were based, and hence under the familiar rule of appellate procedure, so often adverted to by this court, we can only look into the record to see if there is substantial evidence therein to support the findings of the court below. If there is, we cannot review the facts, even though, were we hearing the case originally, we might feel inclined to come to a conclusion different from that reached by the trial court. Huber v. Bank, 32 Wyo. 357, 231 Pac. 63, 234 Pac. 31.

Our examination of the record has led us to the conclusion that there is substantial evidence to uphold the findings below, so far as the defendant Mrs. Bernard P. McCann is concerned. There is testimony, in some respects disputed, to the following effect: That on the afternoon of the accident, plaintiff was driving his Ford truck—a vehicle 15 feet long—easterly along Pershing Boulevard. Just how rapidly he was going is in conflict. He himself says about or approximately twenty miles an hour; other witnesses say about fifteen miles per hour. Mrs. McCann testified that she was driving the Buick coupe not over fifteen miles per hour, and that the truck "was not going faster." She herself was proceeding northerly on Warren Avenue at a rate of speed also in dispute. One witness testified that her car was moving at the rate of thirty miles an hour. Plaintiff's truck weighed 2650 pounds,

and was loaded in the rear over the back wheels with 1300 pounds of grain and in front of the grain on the floor of the truck were crates of milk bottles weighing 810 pounds—the total weight of the entire outfit being nearly two and a half tons. The Buick car was estimated to weigh about 3500 pounds. Plaintiff first saw Mrs. McCann's car when she was about half way along the block preceding the intersection of Pershing Boulevard and Warren Avenue. Neither party sounded any horn as they approached the intersection of these streets, which plaintiff entered first. He then reached the center of the intersection before the Buick car entered that area. Although plaintiff swerved to the left in an endeavor to avoid a collision, his truck was thereafter struck by Mrs. McCann's automobile over the right rear wheel, her car's right front wheel being about 6 inches in front of the rear right wheel of the truck, and the truck's front wheels being already completely across the intersection of the streets aforesaid. The impact of the collision threw the truck over on its side, pushing the rear end against the street curbing of the northeast corner of said intersection. The coupe stopped with its front end pointing in a somewhat easterly direction.

It is said that the defendant Mrs. Bernard P. McCann, in approaching the intersection of the streets where the accident occurred, had the right of way, and we are referred to Section 4, Chapter 158, Laws of 1925, and also that provision of the Ordinances of the City of Cheyenne, which reads:

"Of two or more vehicles approaching an intersection, the one approaching from the right shall have the right of way; in the event one or more or two or more vehicles shall have entered an intersection, the one nearest the center of said intersection shall have the right of way."

But in Garner v. Brown, 31 Wyo. 77, 223 Pac. 217, 218, this court said:

"This statute enacts into law the customary 'law of the road,' and conditions being equal, it is the duty of a driver approaching an intersection to give the right of way to vehicles approaching the intersection on his right. Huddy, supra, Sec. 262. But the law above mentioned must be construed reasonably. It does not invariably give the vehicles to the right of the intersection the preference, and did not intend to confer any monopoly upon them. The rights of persons on the streets are relative, and though one is given the right of way by the law aforesaid, it remains his duty to exercise reasonable care to avoid collisions with other vehicles."

Supplementary and in harmony with the rule thus announced is that referred to in 42 C. J. 973, and the many cases in note 87 appended to the text, to the following effect:

"Another rule frequently laid down is that, in the absence of any regulation establishing a different rule, the vehicle first reaching and entering an intersection has the right of way over another vehicle subsequently reaching it, and the driver of the latter vehicle should delay his progress so as to allow the first arrival to pass in safety."

See also Berry's Law of Automobiles (5th Ed) Sec. 946, and cases cited.

The Ordinance of the City of Cheyenne was undoubtedly framed in view of these rules, and in the case at bar the court, from the testimony referred to above, could, as it did, find that plaintiff's vehicle first entered the intersection of the streets and consequently had the right of way as against the Buick coupe. In this connection, the language used in Garner v. Brown, supra, concerning one phase of the evidence in that case, may here be pertinently quoted:

"There is evidence tending to show that defendant made no effort to steer his car so as to avoid the collision, when he apparently, by slightly swerving to the left, would have left plaintiff's car in the clear."

The great weight of the evidence in the record before us is to the effect that the truck was struck by the Buick coupe well towards the rear of its right side. So far as appears, the street to the left of Mrs. McCann's car, as she drew near the truck, was entirely unobstructed. It must be remembered that all regulations concerning traffic are not exclusive but relative, and subject to the common law doctrine that the rights thus given must be so used as not to injure another. Oliver v. Taylor, 119 Wash. 190, 205 Pac. 746.

It is said that plaintiff did not sound his horn as he approached the intersection, as required by Section 3, Chapter 158, Laws of 1925. Aside from the question of whether the requirement mentioned was intended to apply only to the highways of this state, outside of cities and towns, it appears that Mrs. McCann testified that she looked to the left as she approached the intersection. She also testified concerning the rate of speed of plaintiff's truck, which would appear to indicate that she saw it. This testimony was sufficient to permit the trial court to reach the conclusion that the failure to give the required signal was not the proximate cause of the accident. That in effect was the result of the general finding below against Mrs. McCann on the question of negligence. The rule seems to be that the violation of a duty imposed by statute upon an automobile driver does not of itself impose liability for an injury caused by his car, but it must appear also that the violation of the legal duty was a proximate cause of the injury. Berry's Law of Automobiles (5th Ed.) Sec. 216 and extended list of cited cases; 42 C. J. 886-7, Sec. 587; 2 Blashfield Cyclopedia of Automobile Law 1219, Sec. 15.

It is also insisted that because the traffic ordinance of the city of Cheyenne provides, among other things:

"In passing street intersections, anywhere in the city, in the event any other vehicle is approaching said intersection or corner from the opposite direction or from either side, and is within 100 feet of said intersection, the rate of speed shall not exceed 15 miles per hour,"

and because plaintiff stated on the witness stand that his truck was travelling about or approximately twenty miles per hour at the time he entered the street intersection, he cannot recover in this case. While the actual speed of his vehicle was in dispute, as already indicated, some witnesses placing it about the speed required by the ordinance just quoted from, still, applying the rule of proximate cause above mentioned, the higher rate of speed would not support counsel's contention. The court below was fully warranted in concluding from the testimony abstracted as above that the speed of plaintiff's truck, assuming it to have been twenty miles per hour in violation of the ordinance, was not the proximate cause of the collision. Indeed, recalling that the truck was struck well towards the rear on the right side, and the additional fact that the vehicle was fifteen feet in length, it is demonstrable with practically mathematical certainty that a fifteen mile an hour speed on its part would not have avoided the accident. The point of impact would in such case have been only more towards the center of the truck, instead of towards its end.

The appeal of Bernard P. McCann disputes his liability at all under the facts of this case. The judgment against him is predicated solely upon the fact that he is the husband of Mrs. McCann. It is undisputed that the latter is the sole owner of the Buick coupe, that Mr. McCann had no interest whatever in it and that he was not pres-

ent when the accident happened. No phase of family purpose or agency is required to be considered.

For the respondent we are reminded of Chapter 4547, Compiled Statutes of Wyoming 1920, which provides that:

"The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, * * * shall be the rule of decision in this state when not inconsistent with the laws thereof, and shall be considered as of full force, until repealed by legislative authority."

It is urged that under this statute the husband is liable for the wife's torts, as at common law. In further support of this contention, we are cited to Section 4981, W. C. S. 1920, which reads:

"When any judgment is rendered against a husband and wife for the tort of the wife, execution on such judgment shall first be levied on the lands of such wife, if she have any."

The statute last quoted appears first to have been passed by the territorial legislature of Wyoming in 1876, being included in Chapter 82 of the Compiled Laws of Wyoming for that year. That chapter was entitled "An Act to Protect Married Women in Their Separate Property and the Enjoyment of the Fruits of Their Labor," and dealt with the matters mentioned in its title. It was a good example of the more liberal legislation releasing married women from the rigors of the common law, which came into existence in many states of the Union about that period and which is known to the legal profession generally as the "Married Women's Acts." With but slight changes in phraseology, the legislation covered by Chapter 82 aforesaid was readopted in the Revised Statutes of Wyoming of 1887, carried forward through the subsequent statutory

compilations of 1899 and 1910, and now appears in Chapter 319, W. C. S. 1920.

The provisions of law included in the chapter just mentioned, generally speaking, confer upon a married woman in this state the right to hold all her property, whether acquired before marriage or during coverture, as her sole and separate property, under her sole control as though she were unmarried, and not subject to the disposal, control or interference of her husband. She may dispose of such property as if she were unmarried and may make contracts and incur obligations and liabilities, all of which can be enforced against her as if she were unmarried. She may sue and be sued in all matters relating to her person, property or reputation, as if she were a *feme sole*. She may carry on any trade or business, perform any labor or services on her separate account. Her earnings therefrom are her own separate property and she may sue and be sued concerning these matters as if *sole*.

Judge Cooley, in his work on torts, written shortly after legislation of this kind had become prevalent in the states of the Union, said this:

"Certainly the reasons on which the new legislation proceeds are such as should leave the wife to respond alone for her torts, for they assume that she is fully capable of controlling her own actions, and can and will act independently of her husband."

His view of the matter seems to have strongly appealed to the courts, at least so far as torts of the wife, connected with her separate property, were concerned. In Hageman v. Vanderdoes, 15 Ariz. 312, 138 Pac. 1053, L. R. A. 1915A 491, Ann. Cas. 1915D 1197, decided in 1914, the court, after a survey of the authorities, declares that:

"The weight of authority holds that the common-law liability of the husband for the voluntary torts of the wife is abrogated, so far as concerns torts connected with

her separate property, by married women's statutes, which, in general, confer upon the wife the ownership and management of her own property, free from the control of her husband, without expressly touching the subject of liability for her torts.''

Fourteen years later, in Curtis v. Ashworth, 165 Ga. 782, 142 S. E. 111, 114, 59 A. L. R. 1457, another appellate court of last resort, reviewing the same subject, used this language:

''By the great weight of authority it is held that the common-law liability of the husband for the voluntary torts of the wife is abrogated, so far as concerns torts connected with her separate property, by the married women's acts, which, in general, confer upon the wife the ownership and management of her own property, free from the control of her husband, without expressly repealing such liability.''

To the same effect see 2 Blashfield Cyclopedia of Automobile Law (1927), p. 1311, Sec. 2; Foster v. Ingle, 147 Tenn. 217, 246 S. W. 530, 27 A. L. R. 1214; Boutell v. Shellaberger, 264 Mo. 70, 174 S. W. 384, 386, L. R. A. 1915D 847. Our research has led us to the same conclusion.

Practically all of the cases cited by respondent on this branch of the case at bar deal with the husband's liability for personal torts of the wife, not connected with her separate property. See Morgan v. Kennedy, 62 Minn. 348, 64 N. W. 912; Fitzgerald v. Quann, 109 N. Y. 441, 17 N. E. 354; Nichols v. Nichols, 147 Mo. 387, 48 S. W. 947; Holtz v. Dick, 42 O. St. 23. But in Quilty v. Battie, 135 N. Y. 201, 32 N. E. 47, 17 L. R. A. 521, and in Boutell v. Shellaberger, supra, the husband was held not to be liable under the operation of the Married Women's Acts of the states of New York and Missouri for torts committed by the wife in the management and control of her separate property. Specially approving the opinion of his associates in the

Boutell v. Shellaberger case, Chief Justice Woodson forcefully remarked:

"I fully concur in the opinion of my learned associate filed in this case, not only for the reasons therein stated, but for the further reason I never have and never will subscribe to the doctrine that the husband is responsible for any of the torts of his wife committed after the enactment of the Married Woman's Act of 1889.

"There was a show of reason and justice for that rule prior to the emancipation of the wife and her property from the grasp of the husband. Then he took possession of her person and property by nature of the marriage— they becoming one, and he that one, and as an incident thereto he swallowed up her property also. Having thus absorbed the personnel of his wife and her property, it was considered but just that he should assume all of the responsibilities for which she otherwise would have been liable. Otherwise, no redress whatever could have been had for the torts committed by her.

"But now, under the liberal legislative enactments and judicial rulings completely emancipating the wife from her husband in all property and business relations, it seems to me that there is no longer a vestige of law, reason or justice left upon which to base a claim for damages against the husband for the separate torts of the wife. Such rulings are in my opinion wrong in morals and a travesty upon justice."

We are particularly referred to the cases of Choen v. Porter, 66 Ind. 194, 196, and Quick v. Miller, 103 Pa. St. 67, as sustaining respondent's contention on this phase of the case at bar. The argument is presented that at the time these decisions were rendered, these states having Married Women's Acts, the same as in Wyoming and also having in their statutes a section exactly like Section 4981, supra, the retention of the last-mentioned section indicated a legislative intent not to repeal the general common-law liability of the husband for torts committed by the wife. However, on examination of these cases

shows, as we think, that counsel is quite mistaken as to their purport.

The case of Choen v. Porter, supra, was a replevin action. The tort charged being that the wife claimed and detained some personal property belonging to the plaintiff. While in that case the husband was held liable, nevertheless the court, in the course of its opinon, used the following language:

"The modern statutes, enlarging the rights of married women in respect to property, do not release the husband from his common-law liability for the *personal* torts committed by his wife; but he may not be liable for torts committed by her in the management and control of her separate property. See Rowe v. Smith, 45 N. Y. 230; Baum v. Mullen, 47 N. Y. 577; Kowing v. Manly, 49 N. Y. 192; Fiske v. Bailey, 51 N. Y. 150."

The significant word in the first clause of the quotation is the word "personal," which we have italicized. The New York cases cited by the Indiana court are those which are also cited and relied upon in the later case in the state of New York of Quilty v. Battie, supra. It is apparent that the facts of Choen v. Porter, supra, bring it within the rule announced in the first clause of the quotation—not within the second—which is the case at bar. On petition for rehearing the language of Judge Cooley already quoted and the strongly reasoned opinion in Martin v. Robson, 65 Ill. 129, were submitted for the consideration of the court. While it adhered to the conclusion reached in the original opinion, yet in order to avoid their force, comparing the legislation of Indiana and Illinois on the subject, the opinion on the petition for rehearing said:

"The Illinois statutes in respect to the rights of married women, however, differ somewhat from our own. The statutes of the two states are much alike in respect to the property of married women; but in Illinois a married

woman 'is entitled to receive, use and possess her own earnings, and sue for the same in her own name, free from the interference of her husband.' This feature of the Illinois statutes seems to have been an important element leading to the conclusion arrived at, that the husband was not liable for the torts of the wife. * * *

"In this state the common law prevails as to the earnings of the wife during coverture, and they belong to the husband. Yopst v. Yopst, 51 Ind. 61."

It is, of course, here to be recalled that the Wyoming legislation is similar to that of Illinois relative to the rights accorded married women touching their earnings. It seems that the Indiana legislature also had passed an act concerning the earnings of married women, but it became a law after the trial of the Choen v. Porter cause had occurred. Consequently the court expressly said that the effect of that act was "not considered in passing upon this petition" (for rehearing).

The case of Quick v. Miller, supra, was an action against husband and wife for alleged slander uttered by the wife concerning the plaintiff. It did not deal with a tort committed by the wife in the use of her own property. The decision of the Supreme Court of Illinois in the Martin v. Robson case, was called to the notice of the Supreme Court of Pennsylvania as in the presentation of the Choen v. Porter case. In the course of its opinion the following language was employed:

"In the argument, the defendant cited the decisions under the statutes in some other states, showing that the operation of said statutes was to give a married woman the power of control and disposition of her property, to make contracts, to sue and be sued, as if a *feme sole,* and to discharge the husband from liability for the torts of the wife, during coverture, which he neither aided, advised nor countenanced. An examination of the references,— for instance, Martin v. Robson, 65 Ill. 129,—reveals that those statutes have a broader sweep than any which are in force in Pennsylvania."

These views were thereafter emphasized in the opinion in a rather extended discussion of the limited scope of the Pennsylvania legislation concerning the rights of married women in force at that time, it being pointed out that ''there has been no general removal of her (the wife's) disabilities as imposed by the common law.'' It is clear that the decision is not in point.

In both Indiana and Pennsylvania statutes have since been enacted which expressly relieve the husband of liability for the wife's torts, generally. It would seem that the trend of modern legislation and judicial decision is generally in that direction. See the extended and supplemental notes to the cases of Bourland v. Baker, 141 Ark. 280, 216 S. W. 707, 20 A. L. R. 525; Foster v. Ingle, supra, and Curtis v. Ashworth, supra, in the A. L. R. selected case series.

In the case of Curtis v. Ashworth, decided February 25, 1928, though the statute expressly provided:

''Every person shall be liable for torts committed by his wife, and for torts committed by his child, or servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary,''

it was held, even with respect to the independent torts of the wife, that the common-law principle thus embodied in the statute, was abrogated by implication by statutes enacted after the time the principle was first placed in statutory form, which provided for the separate property of the wife, and in other respects enlarged the rights and powers of married women.

In the case at bar, it is not necessary for us to decide what the effect of the Wyoming legislation concerning the rights and liabilities of married women is upon the liability of the husband, for the personal torts of the wife. In passing it may be observed that in our code of civil

procedure we have Section 5583, W. C. S. 1920, which reads:

"In any civil action, suit or proceeding, whenever any married woman is a party, it shall not be necessary to join her husband with her as a party except in such cases where it would be necessary to join such husband without reference to the fact of his marriage to such woman."

This law was passed as a part of Chapter 68, Laws of 1882, which repealed all acts in conflict with it. It would seem anomalous that it should not be necessary to join a husband who is jointly liable with his wife for the latter's torts in a suit to enforce such liability. However, laying that problem aside and turning to the record before us, we do hold that so far as torts committed by the wife in the use of her separate estate and property are concerned, where no question of agency, ratification, participation or consent of the husband is involved, he should not be held liable.

Entertaining these views, it follows that the judgment of the District Court of Laramie County against Mrs. Bernard P. McCann should be affirmed, but as against Bernard P. McCann it should be reversed, with instructions to dismiss the action regarding him.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.