## Onecia Hagebush

### *v.*

## Willis A. Ragland.

1. BAILMENT—*to whom loan made.* Where a married woman requested of a party the loan of a horse to visit her brother, and, about a week after, her husband and son went for the same, and, not finding the owner at home, the husband sent the son, who procured the animal, which was

used to make the visit, it was *held*, that the jury were warranted in find-
ing the loan was made to the wife, notwithstanding she may not have
directed her son to get the animal, or may not have known 'that he had
gone for it when he did.

2.  SAME—*degree of care required in case of a loan.*  Where an animal
is borrowed without hire, the borrower is bound to use extraordinary care
of the same, and for any failure of such duty, resulting in injury to the
lender, the borrower will be liable.

3.  PARTY AT LAW—*in suit against borrower.*  Where a wife borrows
property, which is injured before its return, she alone is liable to the
lender, and it is not error in the court to allow a dismissal as to the hus-
band, on appeal, when both have been sued before a justice of the peace.
It would be otherwise if the husband was liable.

APPEAL from the Circuit Court of Washington county; the
Hon. AMOS WATTS, Judge, presiding.

Messrs. VERNER & WATTS, for the appellant.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action brought by appellee, before a justice
of the peace, against appellant and her husband, to recover
for injuries to a mare.  It appears that the son of appellee
went to appellant and borrowed the mare.  She was returned
to his pasture, where he found her, as he says, apparently
much injured, by having been beaten and injured.  The ani-
mal died two or three days afterwards.  Appellee claims that
he loaned the mare to appellant, whilst she, on the other
hand, insists that the animal was loaned to her husband.

On a trial before the justice of the peace, appellant re-
covered a judgment for $75, and the wife alone appealed.
The clerk of the circuit court issued a summons to appellant,
and it was served, but none was issued for the husband of
appellant.  The cause was continued at the first term of the
circuit court after the appeal was taken.  At the next term,
a trial was had, resulting in a verdict and judgment for the
same amount as that rendered by the justice of the péace;
but, on the trial, plaintiff dismissed the suit as to the hus-
band, and the verdict was against appellant alone, and upon

which a judgment was rendered, and from which this appeal is prosecuted.

On the trial, the evidence shows that, about a week before the mare was got of appellee, appellant asked him for the loan of a horse, to visit her brother; that when the animal was procured, the husband and son went to get it, but appellee not being at home, they went on to Helm's store, from whence the father sent the son for, and he got the animal. She was used in making the journey to appellant's brother's. The husband was seen beating the animal, and the person who saw it, heard the blows at the distance of near a quarter of a mile.

Appellant, her husband and son all swear that she did or said nothing in connection with the loan of the mare, nor did she even know of the fact until after the animal was brought to her house. Appellee swears that the son said his mother had sent him for the animal, but this he positively denies, and swears he informed appellee that his father had sent him. When the parties were endeavoring to settle, a witness, who was present, swears that appellant admitted she had asked for the loan of a horse, the week previous, but she also denied having done so, in the same conversation. She, when on the stand as a witness, stated that she had asked for the loan of a horse, but that, being in conversation with appellee in reference to her husband being subject to spasms, on his approach, she, only to turn the conversation, made the request.

It appears, from the evidence, appellee and the husband of appellant were in the habit of exchanging farm work, and appellant's husband had frequently borrowed horses from appellee, prior to this time.

Was this evidence sufficient to sustain the finding of the jury? We think it was. It stands admitted, that appellant asked the loan of a horse, to go on a visit to her brother. The animal was procured and used for the purpose. The visit seems to have been made by the family, and we may readily suppose the time when it should be made, and how

it should be accomplished, the family not having a suitable animal to make the journey, had been a matter of discussion, in which she doubtless took a part. She could not have been ignorant of the time when, and the manner in which the journey was to be made. She had asked for the loan of a horse for the purpose, and this one was obtained and used for the purpose, in pursuance of that request. She may not have given directions to her son to go for the mare, or even have known that they had gone for her, but appellant must have known that the mare was to be obtained in pursuance to her request, and for the purpose, and appellee had every reason to suppose, and no doubt did suppose, that he was loaning the mare to appellant, and the jury were fully warranted in finding that appellee did loan the animal to appellant.

It is, however, objected, that the court erred in permitting appellee to dismiss as to the husband. In view of the finding of the jury, there was no error in this action of the court. Had it appeared that the husband alone, or he and appellant, borrowed the mare, then there would have been no legal right to recover against appellant, but as she was alone liable, this was not error.

It is insisted that the court erred in giving appellee's instruction. It informs the jury that, if the animal was borrowed, and that appellant borrowed her without hire, then the borrower was bound to use extraordinary care of the property; and that, if there was a failure of that duty, and the mare died by reason thereof, then defendant would be liable.

Story, in his work on Bailment, section 237, lays down the rule in this language: "As the loan is gratuitous, and exclusively for the benefit of the borrower, he is, upon the common principles of bailment already stated, bound to extraordinary diligence, and of course he is responsible for slight neglect in relation to the thing loaned." He refers to Jones on Bailment, 64 and 65, and that author fully sustains the doctrine. See, also, Parsons on Contracts, Vol. 1, p. 590, and *Coggs* v. *Bernard,* 2 Ld. Raymd. 919. This is the long

and well recognized law, and we were not prepared to find it questioned. The instruction is. strictly in conformity to the doctrine thus announced.

We are unable to perceive any error in this record, and the judgment must be affirmed.

*Judgment affirmed.*