[Civil No. 1349.   Filed February 19, 1914.]

[138 Pac. 1053.]

## LAURABEL HAGEMAN, Plaintiff in Error, v. HELEN VANDERDOES, Defendant in Error.

1. TRIAL—RECEPTION OF EVIDENCE—MOTION TO STRIKE.—In a civil action for $10,000, where the pleadings made defendant's financial condition an issue, testimony of plaintiff, who was unacquainted with real estate values and had no certain knowledge of the value of defendant's property, that it was worth between $200,000 and $300,000, let in without objection, was properly allowed to stand for what it was worth.

2. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.— In such case, especially in view of the fact that defendant offered nothing in rebuttal, error, if any, in allowing such evidence to stand was harmless.

3. HUSBAND AND WIFE—HUSBAND'S LIABILITY FOR WIFE'S TORTS— COMMON LAW.—At common law the husband is liable for the torts of his wife committed during coverture.

   [As to liability of husband for torts of wife, see notes in 83 Am. Dec. 776; 92 Am. St. Rep. 164; Ann. Cas. 1913D, 997.]

4. COMMON LAW—ADOPTION.—The term "common law," as employed in Laws of 1907, chapter 10, section 8, adopting the common law so far as adapted to the conditions of the state and not repugnant to its laws, means the common law of England with its general principles, brought by the colonists and claimed as their birthright in so far as applicable to their condition.

5. COMMON LAW—OPERATION—CESSAT RATIONE CESSAT LEX.—When the reasons for a common-law rule have ceased, the rule itself ceases; such principle presupposing that another rule was in force and was the common law at one time, but that conditions have been changed by legislature, custom or other causes.

6. HUSBAND AND WIFE—ACTION AGAINST HUSBAND AND WIFE—DE- FENSES.—Under Civil Code of 1901, paragraph 1302, requiring the husband to be joined in a suit against his wife, and paragraph 1303

providing that, where both are sued, the wife may defend for her own right, when husband and wife are sued together, the husband also may separately defend for his own right, and when they are sued together, and their rights conflict, each may defend as other defendants might defend their separate rights.

7. HUSBAND AND WIFE—HUSBAND'S LIABILITY FOR WIFE'S TORTS—ABROGATIONS BY MARRIED WOMEN.—The husband's common-law liability for the torts of his wife is abrogated as to torts connected with her separate property by the married women statutes, which in general confer upon her the ownership and management of her own property free from the control of her husband, though without expressly touching his liability for her torts.

8. JUDGMENT—PARTIES—"PROPER CASE."—Under Civil Code of 1901, paragraph 1429, providing that judgments may in a proper case be given for or against one or more of several plaintiffs, or against or for one or more of several defendants or interveners, the term "proper case" refers to such a case made by the evidence as will not support a joint liability, as alleged, but will support a liability and judgment against some of the defendants, in which event there is a proper case where a judgment may be given against one defendant and in favor of another defendant, notwithstanding that they have been properly joined as defendants in an action.

9. HUSBAND AND WIFE—TORTS OF WIFE—LIABILITY OF HUSBAND.—Arizona Constitution is silent as to the husband's common-law liability for the torts of his wife. Laws of 1907, chapter 10, section 8, adopts the common law so far as consistent with, and adapted to, the conditions of the state and the necessities of the people, and not repugnant to the laws of the state or the United States. Civil Code of 1901 provides by paragraph 1302 that, when a married woman is a party, her husband shall be joined with her, except when the action concerns her separate property or is between herself and her husband, and that, where the wife is sued with her husband, she may defend in her own right. Paragraphs 3102, 3103, makes certain property the wife's separate property. Paragraph 3105 provides that, if she is 18 or upward, she has exclusive control of her separate property, free from liability for her husband's debts. Paragraphs 3104, 3109, provide that during coverture the husband has the sole right of disposal and control over community property, with the right of the wife to contract debts for herself and children upon his credit. Paragraph 1429 provides that judgments may in a proper case be given for or against one or more of several defendants or plaintiffs, and by paragraph 3106 married women of 18 years and upward have the same legal rights of men of 21 and subjects them to the same legal liabilities of men of such age, with the right to vote, etc. *Held*, in view of such provisions, that the husband's common-law liability for the voluntary torts of his wife does not exist in this state.

10. HUSBAND AND WIFE—ACTION AGAINST WIFE—JOINDER OF HUS-
BAND.—Under Civil Code of 1901, paragraph 1302, requiring that,
when a married woman is a party, her husband shall be joined with
her, except when the action concerns her separate property, or is
between herself and her husband, the husband is not relieved from
the burden of becoming a party defendant, in an action for the
wife's assault during his absence, although he has no common-law
liability therefor.

11. ASSAULT AND BATTERY—EXCESSIVE DAMAGES.—In an action for
assault and battery to recover $10,000 exemplary damages and
$5,000 as special damages, in which the wealth of the female de-
fendant was made an issue, and there was evidence that her property
was valued at between $200,000 and $300,000, and where she ap-
peared in court fashionably attired, in contrast with plaintiff, a
general verdict of $6,500 *held*, not to indicate passion or prejudice,
justifying a setting aside of the verdict as excessive.

WRIT OF ERROR from the Superior Court of the County
of Maricopa. J. C. Phillips, Judge. Affirmed.

STATEMENT OF FACTS BY THE COURT.

The defendant in error commenced this action against the
plaintiff in error to recover damages alleged to have resulted
from a malicious assault made upon plaintiff by the defend-
ant Laurabel Hageman on the twelfth day of June, 1912. The
plaintiff demands exemplary damages in the sum of $10,000
and special damages in the sum of $5,000. The right to re-
cover general damages is based upon the malicious assault and
battery, and mental anguish, suffering, shame and dishonor,
and the right to recover special damages is based upon the
loss of employment arising from the notoriousness of such as-
sault.

Upon the motion of the defendant, it appearing that defend-
ant is a married woman, the wife of George Hageman, the
court ordered that George Hageman be brought in as co-
defendant; and in pursuance to such order plaintiff filed a
second amended complaint alleging: "That the defendants
are husband and wife and the defendant George Hageman
has been made a party to the action for that reason, by an
order of court entered in said cause. . . . "

The defendants made separate answers. The defendant
Laurabel Hageman denied that she, without provocation or in
an unlawful, violent, gross or outrageous manner, or with

malice, made the assault on plaintiff in the presence of other persons, or at all, and denied that any act on her part or any language used by her has caused plaintiff great mental anguish, suffering, shame, or dishonor, to plaintiff's damage in any sum, or at all, denied that plaintiff's loss of employment resulted from any act of defendant, and denied that plaintiff has suffered any damages in that respect, and denied that defendant is a woman of great wealth, or of any wealth at all.

As an affirmative defense, this defendant alleges that her husband, the defendant George Hageman, was the controlling stockholder of the George Hageman Company, a corporation, and as such was and is in the sole control and management of the corporation's business affairs; that her husband employed the plaintiff as a clerk in the business office of the corporation for about three years and until June 12, 1912; that defendant's husband and plaintiff became infatuated and unduly familiar with each other, which relation between said parties caused friction between the defendants, husband and wife, and caused this defendant's husband to neglect and ill treat this defendant; that this defendant by telephone informed plaintiff of this defendant's unhappiness caused by the infatuation and familiarity existing between plaintiff and defendant's said husband, and requested plaintiff to leave the employ of her (defendant's) said husband, but that plaintiff refused so to do; and that defendant on the twelfth day of June, 1912, went to the office, where plaintiff was employed, for the purpose of personally informing the plaintiff of defendant's said unhappiness caused by defendant's husband's neglect and ill treatment by reason of plaintiff remaining in the employ of, and associating with, defendant's husband, and to persuade plaintiff to leave her said employment and sever her association with said husband. Arriving at said office on said date defendant did then and there in a quiet and kind manner inform the plaintiff of her unhappiness occasioned by plaintiff remaining in the employ of defendant's husband and plaintiff's association with such husband, but plaintiff refused to leave such employment, and refused to sever her associations with defendant's husband "Whereupon defendant requested plaintiff to leave the office and at the same time gently took hold of plaintiff's arm to lead her from the said office, . . . and that thereupon plain-

tiff violently and angrily struck and hit defendant, . . . and defendant, in order to prevent injury to her from the assault thus made upon her by plaintiff, put her hands on plaintiff and pushed her away from defendant, with no unnecessary force or violence, which is the same act complained of by plaintiff in her said complaint.'' Defendant further alleges that on the date of the said transaction a divorce action was pending between these defendants, brought by the husband defendant, which upon trial thereafter was dismissed.

Then, as an additional grounds of defense, plaintiff in error sets forth a conspiracy entered into between plaintiff and the husband defendant against the wife, whereby said plaintiff and husband defendant ''conspired and combined together to compel this defendant (plaintiff in error) to consent and accede to a divorce being obtained against her by her said husband by instituting and prosecuting vexatious, harassing and expensive litigation against her, in order that her said husband could marry the plaintiff herein; and that in pursuance of said conspiracy and combination the plaintiff brought this action against this defendant, and that about the same time the defendant's said husband . . . '' caused other actions to be brought against this defendant. That ''this action of plaintiff against this defendant is being prosecuted by the plaintiff against her with the assistance, advice and connivance of her said husband in pursuance of said conspiracy, and that this action of plaintiff is not being prosecuted in good faith, and is sham. And in further pursuance of said conspiracy and combination, as aforesaid, defendant's husband has caused other suits and litigation to be commenced against this defendant.'' A denial of all allegations of the complaint other than admitted is added.

In his separate answer, George Hageman avers that on the twelfth day of June, 1912, and for a long time prior thereto, these defendants were living separate and apart and were not maintaining marital relations; that, at the time when the alleged difficulty occurred between plaintiff and his codefendant he was not present; neither did he aid, encourage or participate therein, nor have knowledge thereof. He denied damages, denied the authority of his wife to discharge plaintiff from the employ, and denied that she was forced to leave the employ, and denied that she suffered damage thereby.

The defendants were represented by separate counsel, and, when plaintiff rested her case, George Hageman's counsel moved for a nonsuit as far as he was concerned, for the reason the evidence wholly fails to connect him with any liability for the acts complained of. Both the plaintiff and defendant Laurabel Hageman objected to the granting of the motion. The court said in ruling, "I will grant the motion." The plaintiff in error moved that the action against her be dismissed for the reason the court had ruled that her husband be dismissed from the action. Her motion was denied, and an exception reserved. When the evidence was closed, at the request of the attorney for the defendant George Hageman, the court charged the jury to find at all events for the defendant George Hageman, and the verdict of the jury so finds as instructed, viz.: " . . . And under the instructions of the court, we find for the defendant George Hageman."

Judgment was rendered in accordance with the verdict, which judgment and order refusing a new trial the plaintiff in error removes to this court for review, alleging error committed in denying a motion to strike testimony of the value of property, it appearing from the admissions and statements of the witness that such witness was incompetent to testify as to such valuation; that the court erred in dismissing the action as to defendant George Hageman, the husband of plaintiff in error, against the objection of the plaintiff in error, and in refusing to dismiss such action as to this plaintiff in error; that the court erred in directing a verdict for defendant George Hageman, the husband of the plaintiff in error, and at the same time submitting the issues as between plaintiff in error and the defendant in error; and that the court erred in permitting the verdict to stand for the reason the same was grossly excessive in amount, and induced by prejudice and passion on the part of the jury.

Messrs. Alexander & Christy and Messrs. Sloan, Seabury & Westervelt, for Plaintiff in Error.

Mr. Barnett E. Marks, for Defendant in Error.

CUNNINGHAM, J.—The plaintiff testified that the defendant Laurabel Hageman owned a large amount of prop-

erty, giving a general description of the real estate, thus: "She owns the ground where her home is on, ten acres near the Indian school; she owns some land in the Lincoln addition; she owns nearly the whole block where Mr. Hageman has his shop; she owns a house on First avenue and Van Buren; a $2,000 automobile is something too." "Q. Have you any knowledge•of the value of this property you have described? A. Yes, sir. Q. What is it? A. Between $200,000 and $300,000." Upon cross-examination the witness was asked, "What did you say about $200,000 or $300,000"? after she had been asked if she had not testified that the block was worth that sum, and had denied that she had so testified, to which question she answered: "That I thought she was worth that much approximately. Q. You don't know it, do you? A. No, I don't know the fact certainly." She admitted that she did not know what mortgages were on the property, that she was not in the real estate business, nor was she acquainted with the real estate values in the city. Counsel thereupon moved: "Then I move to strike out all the testimony given with reference to the $300,000 she testified to this defendant being worth." The court stated in ruling on the motion: "It may stand for what it is worth." The witness upon further cross-examination stated that she heard the defendant state many years ago that the ten acres upon which her house is situate was worth $1,000 per acre. She knew that a building and loan association built the house but did not know how much of a mortgage they held on the property. She did not know of her own personal knowledge what any of the property was worth. What she knew of the value of the property was what people had told her.

The motion made upon the trial to strike the testimony of plaintiff relating to the value of the defendant's property was confined to "all the testimony given with reference to the $300,000." The assignment of error is broader ˙than the motion and complains that the court erred in denying the motion "to strike out the testimony of the defendant in error . . . placing a valuation upon the property of plaintiff in error." The defendant's financial condition was one of the issues in the case made by the pleadings, and the witness gave as her opinion of the approximate worth of defendant's property described as $200,000 or $300,000. She had not qualified

to give expert testimony upon that subject, but she had made the statement without objection, and until the motion was made no objection to such evidence was apparent, and then no objection was raised to any part of such testimony other than relating to the $300,000, and that was permitted to stand for what it was worth. When no objection was made to the testimony relating to the $200,000 as the approximate worth of defendant's property, it is not apparent that defendant's cause was prejudiced by the order of the court permitting the testimony relating to defendant's property as worth $300,000 to stand for what it was worth.

Clearly, the ruling, if error, was without prejudice under the conditions exhibited by the record. Especially is this the case where the defendant has offered no evidence in rebuttal, as appears here.

At the close of plaintiff's evidence in chief, counsel for defendant George Hageman moved for a nonsuit as to such defendant, for the reason that the evidence discloses that at the time of the assault this defendant was not present; that he knew nothing of the assault; that he took no part in the assault; that his wife and codefendant was over the age of eighteen years; that she was living separate and apart from this defendant; that she was possessed of a separate property. Both the codefendant wife and the plaintiff objected upon different grounds. The court granted the motion. Whereupon the codefendant wife moved for a directed verdict in her favor, for the reason her husband had been dismissed from the case, and because the case cannot continue in the absence of a necessary party, and that the husband is a necessary party. This motion was denied and the case proceeded. Upon these rulings error is predicated. Whether the husband is a necessary party largely depends upon the question whether the husband is liable for damages resulting from a tortious assault made by his wife in his absence, and without his knowledge and consent.

The rule at common law is that the husband is liable for the torts of his wife committed during coverture. 21 Cyc. 1350, and note 71. To this rule of the common law both parties agree. Has that rule been adopted in Arizona, and does it obtain now? is the question raised for our consideration. The common law so far only as it is consistent with, and

.adapted to, the natural and physical conditions of this state, .and the necessities of the people, and not repugnant to, or inconsistent with, the Constitution of the United States, the ·Constitution and laws of this state, or the established customs of the people of this state, is adopted and directly made the rule of decision in all courts of the state by section 8 of chapter 10, Laws of Arizona of 1907.

In .defining the term "common law," as employed in a like worded statute of Nevada, in *Reno Smelting, Milling & Reduction Works* v. *Stevenson,* 20 Nev. 269, 19 Am. St. Rep. 364, 4 L. R. A. 60, 21 Pac. 317, the court says the term was employed in the same sense in which it is generally understood in this country, and the intention of the legislature was to adopt only so much of it as was applicable to our conditions. "'The common law of England is not to be taken in all respects to be that of America. Our ancestors brought with them its general principles, and claimed it as their birthright; but they brought with them and adopted only that portion which was applicable to their situation." *Van Ness* v. *Pacard,* 27 U. S. (2 Pet.) 137, 7 L. Ed. 374. "The common law," says Chancellor KENT, "so far as it is applicable to our situation and government, has been recognized and adopted as an entire system by the Constitutions of Massachusetts, New York, New Jersey and Maryland. It has been assumed, by the courts of justice, or declared by statute, with the like modifications, as the law of the land in every state. It was imported by our colonial ancestors as far as it was applicable." 1 Kent's Commentaries, 473. The authorities agree upon the meaning of the adoption of the common law and the extent to which it is adopted by such statutes, and citations of authorities would be superfluous. Unless the common-law rule of liability of the husband for the torts of his wife is consistent with or adapted to the necessities of the people and not repugnant to, or inconsistent with, the Constitution and laws of this state, or to the established customs of the people of the state, then the rule was never adopted .as the rule of decision by the courts of the state.

It is argued that a cardinal rule of the common law is that when the reasons for the rule have ceased, the rule itself ·ceases, and without doubt such is the common law. That is only another way to express the elasticity of that great sys-

tem of laws. That rule presupposes that another rule was in force and was the common law at one time, but those conditions have changed by legislation, by established custom, or from other causes, so that the reasons for the establishment of the given rule are no longer in existence, and as a consequence such rule no longer exists.

We will pass the question whether the rule of the common-law liability of the husband for the torts of his wife, committed by her in the absence of, and without the knowledge or consent of, her husband, was adopted as a law of this state with the common-law system, as applicable to the necessities of the people of the territory and the state. We will concede for the purposes of this decision that the hardy pioneers, early settlers of this territory, like our colonial ancestors, brought with them from civilization to this, then wild and dangerous region, the same liabilities and burdens they (some of them, at least) supposed they were leaving behind. We have in mind no established custom of which we are inclined to take judicial notice that can be said to be repugnant to, or inconsistent with, the rule of liability under consideration. Neither is it clear that the necessities of the people of the state require the abolition of such rule; we are therefore concerned with the Constitution and laws of the state and their effect upon this common-law rule deemed to have accompanied the early settlers as their habits, their weapons and their clothes accompanied them.

We may say at the outset that no provision of the state's Constitution expressly abolishes this rule of liability, or directly recognizes its existence. It will be necessary to examine the statutes upon the subject.

Paragraph 1302, Revised Statutes of Arizona of 1901, requires that, when a married woman is a party, her husband shall be joined with her, except when the action concerns her separate property, and when the action is between her and her husband, whereupon she may sue or be sued alone. This was the law since the organization of the territory of Arizona. Ariz. Comp. Laws 1864–71, c. 48, sec. 7.

All property owned or claimed by the wife before marriage, and that acquired by gift, devise or descent after marriage, and the increase, rents, issues and profits, as also the earnings

and accumulations of herself and her minor children in her custody while she has or may have lived separate and apart from her husband, is made her separate property. Ariz. Rev. Stats. 1901, pars. 3102 and 3103.

If she is of the age of 18 years or upward, she has the sole and exclusive control of her separate property, and is not liable for the debts, obligations or engagements of her husband, and she may contract, sell, transfer, mortgage, convey, devise or bequeath her property in the same manner and with like effect as if she were unmarried. Ariz. Rev. Stats. 1901, par. 3105, re-enacted from sec. 3, c. 32, Ariz. Comp. Laws 1864–71.

During coverture the husband has the sole right of disposal of, and the control over, the community property (Ariz. Rev. Stats. 1901, par. 3104), with the right of the wife to contract debts for herself and children upon the credit of her husband in which case she and her husband must be sued jointly (Ariz. Rev. Stats., par. 3109, and Ariz. Rev. Stats. 1901, par. 1304).

The wife may be sued alone when the action concerns her separate property, and when the action is between herself and her husband. In all other cases her husband must be joined; and she must be joined with her husband in actions to recover debts contracted by the wife upon the credit of her husband for necessaries for herself and children.

The laws relating to the rights of married persons first enacted in Arizona have been but slightly modified since the organization of the territory to the present, as will appear from an examination of chapter 32, Compiled Laws of 1864–71, including amendments thereto, page 306, and chapter 48, sections 7 and 8, concerning proceedings in civil cases.

The disabilities of the wife resulting from the marriage state, as known to the common law, have never been recognized by the law-making power of Arizona in their entirety, because, doubtless, that power has considered that all of the common-law disabilities of married women are not applicable to the conditions and necessities of the people of Arizona. Such disabilities as ever did obtain in Arizona largely disappeared with the enactment of the Compiled Laws of 1864–71, and those remaining have since been abolished with the lone exception, if that be an exception, indicated in paragraph 1302, Revised Statutes of Arizona of 1901, requiring the hus-

band to be made a party with the wife when she is sued, except in certain cases specified. If it be considered that such is a disability, such disability cannot be considered a common-law disability, except in a modified form, because paragraph 1303 provides that, where the wife is sued with her husband, she may defend for her own right. When the husband and wife are sued together, if the wife may defend for her own right, as the statute provides, which undoubtedly she may, the husband may separately defend for his own rights, although sued with his wife. But it is clear, where the husband and wife are sued together, but their rights conflict, each may defend in the same manner as any other defendants, joined as parties, would defend for their separate rights.

This action does not come within any of the exceptions specified in paragraph 1302 of the Revised Statutes of Arizona of 1901, that exempts the husband from becoming a party to the action in which the wife is made a party; therefore the husband was a proper party defendant.

The plaintiff in error contends that the court erred in dismissing the defendant husband from the case when the plaintiff closed her evidence in chief, and refused to dismiss this plaintiff in error, his wife, also. The action was one of tort against several defendants, and before plaintiff is entitled to recover she must show a joint tort against the defendants, by the common-law rule. 23 Cyc. 811. But this rule has been changed by statute. Paragraph 1429 of the Revised Statutes of Arizona of 1901 provides that: "Judgment may in a proper case be given for or against one or more of several plaintiffs, or against or for one or more of several defendants or interveners."

The term "proper case" in the statute has reference to such a case made by the evidence as will not support a joint liability, as alleged, but will support a liability and judgment against some of the defendants, in which event we have a proper case where a judgment may be given against one defendant and in favor of another defendant, notwithstanding that they have been properly joined as defendants in an action.

If the evidence is sufficient to charge the defendants with a joint liability or joint tort, then the court erred in dismiss-

ing the action as to one of the joint tort-feasors, and this is
the real ground for the contention of plaintiff in error. It
is not claimed by defendant in error that defendant George
Hageman in any manner aided, encouraged, participated in,
consented to, or was present at the time or place, or had any
previous knowledge of the tortious assault. The only claim
made is that George Hageman was the husband of the plain-
tiff in error, and as such husband, the common-law rule of his
liability for the voluntary torts of his wife not having been
abrogated, the fact of this marital relation having been ad-
mitted is conclusive that the husband and wife are jointly
liable, and that the plaintiff must recover, if at all, against
both. We have held above that in this class of actions the
statute requires the husband to be made a party with his wife.

If the common-law rule of liability obtains in this state,
there is great force in the position taken by plaintiff in error.
In order to arrive at a clear understanding of this question
and to reach a proper conclusion, it becomes necessary to in-
quire: First, if the common-law rule is in force in this state;
and, second, if such rule is not in force, what bearing the
statute requiring the husband to be joined with his wife has
upon the husband's liability to the judgment to be rendered
against the wife in such a case.

The question whether the married women's law—statutes
investing the wife with a separate property, and with the
exclusive control and enjoyment of the same, and her right
to sue and the liability to be sued in her own name and with-
out the joining of her husband in all matters concerning her
separate property, and such statutes not touching the subject
of the wife's voluntary torts—has the effect to relieve the
husband from liability for such torts has been frequently
before the courts. The weight of authority holds that the
common-law liability of the husband for the voluntary torts
of the wife is abrogated, so far as concerns torts connected
with her separate property, by married women's statutes,
which, in general, confer upon the wife the ownership and
management of her own property, free from the control of her
husband, without expressly touching the subject of liability
for her torts. We cite *Quilty* v. *Battie,* 135 N. Y. 201, 17
L. R. A. 521, 32 N. E. 47, in illustration.

Upon the question of the liability of the husband for the voluntary torts of the wife which do not concern her separate property, the authorities are in some conflict. In the greater number of states the courts have held the married women's laws have not had the effect to relieve the husband from his common-law liability for such torts of his wife. *Henley* v. *Wilson,* 137 Cal. 273, 92 Am. St. Rep. 160, 58 L. R. A. 941, 70 Pac. 21, and the cases cited in L. R. A. and Am. St. Rep. are sufficient to illustrate the view taken by such courts. Upon the other side of the question, Illinois, in *Martin* v. *Robson,* 65 Ill. 129, 16 Am. Rep. 578, and in *Hagebush* v. *Ragland,* 78 Ill. 40, holds that such statutes do relieve the husband from such liability, when such laws have not expressly touched upon the subject of her voluntary torts, but they have invested her with the control and management of her separate property without the husband's interference. The Illinois decisions have been followed in *Norris* v. *Corkill,* 32 Kan. 409, 29 Am. Rep. 489, 4 Pac. 862; *Lane* v. *Bryant,* 100 Ky. 138, 36 L. R. A. 709, 37 S. W. 584; *Culmer* v. *Wilson,* 13 Utah, 129, 57 Am. St. Rep. 713, 44 Pac. 833; and in *Schuler* v. *Henry,* 42 Colo. 367, 14 L. R. A., N. S., 1009, 94 Pac. 360.

In *Martin* v. *Robson, supra,* the leading case upon the side of the question now under consideration, Mr. Justice THORNTON, speaking for the court, in the course of an able opinion, said: "The intention of the legislature to abrogate the common-law rule, to a great degree, that the husband and wife were one person, and to give to the latter the right to control her own time, to manage her separate property, and contract with reference to it, is plainly indicated by these statutes. While they do not expressly repeal the common-law rule that the husband is liable for the torts of his wife, they have made such modification of his rights and her disabilities as wholly to remove the reason for the liability. . . . A liability which has for its consideration rights conferred should no longer exist when the consideration has failed. If the relations of husband and wife have been so changed as to deprive him of all right to her property, and to the control of her person and her time, every principle of right would be violated, to hold him still responsible for her conduct. If she is emancipated, he should no longer be enslaved. . . . So long as the husband was entitled to the property of the wife

and to her industry, so long as he had power to direct and control her, and thus prevent her from the commission of torts, there was some reason for his liability. The reason has ceased. The ancient landmarks are gone. The maxims and authorities and adjudications of the past have faded away. The foundations hitherto deemed so essential for the preservation of the nuptial contract, and the maintenance of the marriage relation, are crumbling. The unity of husband and wife has been severed. They are now distinct persons, and may have separate legal estates, contracts, debts, and injuries. . . . His legal supremacy is gone, and the scepter has departed from him. . . . Her brain and hands and tongue are her own.'' And says Judge FREEMAN, in his note to *Henley* v. *Wilson,* 92 Am. St. Rep. 169: ''We may add that she alone should be responsible for them.'' Further commenting upon this question in an able note to *Henley* v. *Wilson,* Judge FREEMAN, after referring to the effect of statutes upon the question (92 Am. St. Rep. 170), has this to say: ''Some further reason must be sought than the diversity of the statutes of different states. We certainly should have expected a different conclusion from the California court, not only because of the extent to which the rights of married women have been enlarged under the laws of that state, but because the rule laid down in many of the older cases has expressly been corrected by statute.''

Judge COOLEY (1 Torts, 197, 13th ed.) says: ''In the recent changes in the common law effected by statute in the several states, whereby married women have been given an independent power to make contracts and to control property, it is not very clear how far the law of torts has been modified. We should probably be safe in saying that, so far as they give validity to a married woman's contracts, they put her on the same footing with other persons, and, when a failure to perform a duty under a contract is in itself a tort, it may doubtless be treated as such in a suit against a married woman. . . . In Illinois it has been decided that under the new statutes the husband is not liable for a slander of the wife in which he did not participate, though the statutes on the subject, which were supposed to have changed the common law, were silent as regards her torts, and only purported to secure to the woman her property and earnings and the full control

and enjoyment thereof. This is, perhaps, a sound conclusion.
Certainly the reasons on which the new legislation proceeds
are such as should leave the wife to respond alone for her
torts, for they assume that she is fully capable of controlling
her own actions, and can and will act independently of her
husband.''

The states in which the like women's laws have been en-
acted, and the courts have held such laws have not served to
relieve the husband from the common-law liability for the vol-
untary torts of his wife, as a general rule such courts have
followed that other common-law rule in the construction of
such statutes, viz., that, these statutes being in derogation of
the common law, they must be strictly construed. Such rule
was kept in mind in *Morgan* v. *Kennedy,* 62 Minn. 348, 54
Am. St. Rep. 647, 30 L. R. A. 521, 64 N. W. 912. But such
rule of construction does not obtain in this jurisdiction, and
has been expressly abolished by section 4, chapter 10, Laws of
1907, wherein it has been enacted: ''The rule of the common
law that statutes in derogation thereof are to be strictly con-
strued, shall not apply to the statutes of this territory (state),
but such statutes and all proceedings under them shall be lib-
erally construed with a view to effect their object and to pro-
mote justice.''

In this case the facts are that the assault was made by the
wife at a time when she and her husband were living separate
and apart. That the reasons moving the defendant wife to
make the assault were her belief that the plaintiff by contact
and improper relations with the husband, and plaintiff's per-
sonal charms, had alienated the affections of the husband from
the wife, and the husband and the plaintiff had entered into
a conspiracy to effect a legal separation of the husband and
wife, and in furtherance of such conspiracy a divorce suit had
been commenced and other legal proceedings had been started
and were pending, including this action against this wife
defendant. Upon these grounds this defendant seeks to ex-
cuse her action in forcibly ejecting plaintiff from the plain-
tiff's office and place of employment. The only grounds upon
which this defendant seeks to avoid liability for her inexcus-
able conduct is that her husband was jointly liable, because of
the marital relation alone. The court ruled that such relation
did not make him liable. We think the ruling was just and

wholly within the enlightened modern view that should be taken of the effect of the married women's laws emancipating her from the common-law slavery, as was held by the Illinois court in *Martin* v. *Robson, supra,* and the courts, following that view, as supported by sound reason and justice, and by such eminent text-writers as COOLEY and FREEMAN.

Aside from these eminent authorities and the sound reasons controlling them, there exists in Arizona an additional reason for taking the above view of the question, not present in any of the laws of the states that have taken the opposite view of the married women's laws. Paragraph 3106, Revised Statutes of Arizona of 1901, with slight changes as to the age, re-enacted paragraph 2104, Revised Statutes of Arizona of 1887, and is as follows: "Hereafter married women of the age of eighteen years and upwards shall have the same legal rights as men of the age of twenty-one years and upwards, except the right of suffrage and of holding office, and except the right to make contracts binding the common property of the husband and wife; and shall be subject to the same legal liabilities as men of the age of twenty-one years and upwards . . . " —and may vote, etc. Men are liable for their torts; therefore married women are likewise liable for their torts. If married men are legally liable for the voluntary torts of their wives, then such liability must likewise rest upon a wife for the voluntary torts of her husband. Her liability is made the same as is his. If this common-law rule of liability of the husband is preserved in this state, then this statute extends such rule of law to married women over the age of eighteen years, which is absurd in view of the expressed legislation upon the subject of women's rights. We have no hesitancy in holding that the rule of the common-law liability of the husband for the voluntary torts of his wife does not now exist in Arizona.

It remains to be considered what effect paragraph 1302 has upon a judgment to be entered in a case coming within the class to which this action belongs. The statute is clear in its terms and will bear no interpretation that would relieve the husband from the burden of becoming a party in such case, as we have seen. If he is not liable by reason of his marital relation, as we have decided above, then is he liable by reason of the necessity of being a party? Since the organization of the territory of Arizona, the statute (paragraph 1302) has

existed. See Comp. Laws 1877, sec. 8 (2444), p. 410. Since 1887 married women have been burdened with the same lia- bilities as men. See Ariz. Rev. Stats. 1887, par. 2104, re- enacted as paragraph 3106, Ariz. Rev. Stats. 1901, with the slight amendment as to age. It would seem that, where the legislature has cast upon a married woman the same liabilities as men have, there remains no reason why the husband of a married woman should be joined with her in an action where she is made a party. The Michigan court had this question be- fore it in *Burt* v. *McBain*, 29 Mich. 260, and Justice COOLEY, speaking for that court, said: ''What reason there can be for joining the husband as defendant, . . . it is d....cult to con- ceive, for it would seem plain that he might disregard the proceeding altogether, and suffer the case, so far as he is con- cerned, to go by default, without either subjecting himself to pecuniary risk, or either improving or prejudicing the case of the plaintiff against the real defendant. These facts would constitute reasons sufficient for such an amendment of the statute as would make the joinder unnecessary, but the legisla- ture seems never to have recognized them. On the contrary, in the very statutes referred to, it is assumed that the hus- band, though no longer responsible for the damage which may be recovered, is still a proper party to the suit. . . . '' In Michigan the statute had expressly repealed the common- law rule of the husband's liability for the wife's voluntary torts, but had retained the statute in force requiring the hus- band to be joined when his wife was made a party. We have held that the husband has been relieved of liability for his wife's voluntary torts by the married women's laws, and by paragraph 3106, Revised Statutes of Arizona of 1901, as a re-enactment of paragraph 2104, Revised Statutes of Arizona of 1887, and the requirement of making the husband a party to actions when his wife is a party has been retained.

The ruling made in *Burt* v. *McBain, supra,* was approved and followed in *Marcus* v. *Rovinsky,* 95 Me. 106, 49 Atl. 420, and such rule is made applicable to the parties only, and has no reference to the question of liability. The husband was a proper party, and, in one sense, he was so made in this case. The evidence discloses no liability upon his part, and the court properly directed a verdict in his favor. In other words, the court committed no reversible error in ordering a nonsuit,

or in dismissing the action against the defendant husband. While the record indicates, but not clearly, that one of such courses was taken in the case, but it is clear that the jury was finally instructed to render a verdict for the husband defendant. Either course could not prejudice the rights of the plaintiff in error.

The plaintiff in error complains that the verdict is grossly excessive, and tainted with passion and prejudice. If passion and prejudice entered into the verdict, it cannot stand. The mere fact that the amount of the verdict exceeds our idea of the proper sum recoverable under the evidence, if such should be the fact, is not sufficient to justify a court in annulling the verdict. The plaintiff in error contends that some relation in amounts must exist between the compensatory and exemplary damages, and the proper relation does not appear. The verdict was a general one for $6,500. The plaintiff claimed $10,000 as exemplary damages and $5,000 special damages. No special issues were submitted to the jury, and the above general verdict was returned. We do not know how the jury arrived at just that sum, but it was their duty to fix from the evidence a just amount. It is mentioned in the brief of counsel and in argument at the bar that the fashionable personal appearance of the plaintiff in error at the trial was commented upon by the counsel for defendant in error, and the comparison drawn between the conditions and appearances of a working girl, modestly clad, with a fashionably and richly dressed opponent, and such comparison aroused a prejudice and passion in favor of plaintiff and was cause of the excessive verdict. To this we do not assent upon the statements of counsel alone. It has been the common observation of the race from a time whence the memory of man runneth not to the contrary that the decent exhibition of female charms has served in all ages to enlist the sympathy, if not the active services, of the male portion of the race, and, if applied in this case, we would be forced to presume that, instead of working a prejudice with the jury, the remarks of counsel, calling direct attention of the jury thereto, served to reduce rather than enlarge the amount of the verdict. Nothing appears in the record from which the reasonable inference can be drawn that the jury, in arriving at the amount of their verdict, were controlled, or in any manner affected, by the

appearance of the defendant or the remarks of counsel relating thereto, and no other grounds are advanced by plaintiff in error justifying an interference.

· We find no reversible error in the record. The judgment is affirmed.

FRANKLIN, C. J., and ROSS, J., concur.

Application for rehearing denied.

NOTE.—The authorities on the effect of married women's acts upon husband's liability for wife's torts are reviewed in notes in 14 L. R. A., N. S., 1003, and 25 L. R. A., N. S., 840.