No. 18,525.

ROSAMONDE GILLMORE, *Appellant,* V. ROBERT E. GILL-
MORE et al., *Appellees.*

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. PLEADINGS—*Inducing Morphine Habit—Limitation of Actions.*
Where the question is so raised that a liberal construction is
required, legal incapacity of the plaintiff, sufficient to sus-
pend the operation of the statute of limitations, is sufficiently
pleaded by allegations that at the time of the accrual of her
cause of action she was a "morphine fiend"; that she was
afflicted with "morphinomania," although she did not know
it, that she was unable to control her desire for morphine, and
was wholly under the influence of the defendant, and that she
did not realize her condition or the wrong done her.

2. SAME—*Evidence Good as Against a Demurrer.* As against
a demurrer to the evidence, an allegation of legal incapacity
is sufficiently sustained by testimony that the plaintiff was a
morphinomaniac; that she was incompetent of exercising any
judgment and discretion in the ordinary business affairs of
life; that she was not responsible; that she was a maniac;
that her will power was gone; that she could not fix her
attention on anything.

Appeal from Stafford district court; DANIEL A.
BANTA, judge. Opinion on rehearing filed March 7,
1914. (For original opinion see *ante,* p. 293, 137 Pac.
958.) Reaffirmed as to one defendant; reversed as to
the other.

*Paul R. Nagle,* of St. John, for the appellant.

*Frank L. Martin,* and *Van M. Martin,* both of Hutch-
inson, for the appellees.

The opinion of the court was delivered by

MASON, J.: Rosamonde Gillmore sued Mary A. and
Frank B. Gillmore, alleging that they had induced her
to marry their son, knowing that he had a communi-
cable disease, and that they had made her a victim

of the morphine habit. A demurrer to her evidence was sustained, and she appealed. Upon the original hearing in this court the judgment was affirmed on the ground that the statute of limitations had run, because the action was not brought until more than a year after the plaintiff had been cured of the habit. (*Gillmore v. Gillmore,* ante, p. 293, 137 Pac. 958.) This ruling was based upon the date of the filing of the amended petition on which the case was tried. It appears that the original petition contained substantially the same averments, and was filed within the year. For this reason a rehearing was granted.

The defendants maintain that the plaintiff neither pleaded nor gave evidence of any facts tending to show that at the time her cause of action accrued she was under any "legal disability" in the sense in which that term is used in the statute of limitations. (Civ. Code, § 18.) The phrase is elsewhere defined as including persons "of unsound mind." (Gen. Stat. 1909, § 9037, subdiv. 27.) The petition does not employ apt words to bring the plaintiff clearly within the terms of the statute. It does not use the phrase "legal disability," or "of unsound mind," or any obvious equivalent. We think, however, that by a very liberal construction it may be regarded as containing allegations which, when supplemented by inferences fairly to be drawn therefrom, are sufficient to bring the case within the statutory exception. It alleges that in July, 1899, she had become a "morphine fiend," and was afflicted with "morphinomania," although she did not know this until 1910; that the habit was so fixed and permanent that she was unable to control her desire for the drug, and was wholly under the influence of defendant Mary A. Gillmore; that she first fully realized that she had been addicted to the use of morphine, and first fully realized the wrongs practiced upon her, after she had been cured of the habit, in 1910. It also alleges that the plaintiff had become "mentally weak and in-

capacitated." This is said, however, of her condition at the time of the commencement of the action—not when her cause of action accrued. To say that a person is addicted to the morphine habit does not necessarily imply that he is of unsound mind, or under legal disability. But where it is added that he is afflicted with "morphinomania," is wholly under the influence of another person, and does not realize his condition, we think a basis is laid for introducing evidence. In *Howard v. Carter,* 71 Kan. 85, 80 Pac. 61, an allegation that the plaintiff was "mentally weak" was held a sufficient plea of incapacity. There was no clear and explicit evidence that the plaintiff's condition, as the result of the morphine habit, amounted to unsoundness of mind. But upon the entire record we think there was room for an inference to that effect. A physician testified that a person in her condition is incompetent of exercising any judgment and discretion in the ordinary business affairs of life; that he is not responsible; is a maniac; his will power is gone; he can not fix his attention on anything; when he starts to do something he will forget it. He also gave testimony of a contrary tendency, but the present question is whether there was any evidence at all to support the theory of legal incapacity. Another witness said that at times the plaintiff's mind wandered—that there was no sense to her talk. A letter written by her gives room for an argument that her mind was not unsound, but can not be said to establish this conclusively. We think there was sufficient evidence of incapacity to require the overruling of the demurrer. Cases on the general subject are collected in the works cited, but few of them are sufficiently similar to this to be helpful. (19 A. & E. Encycl. of L. 237; 25 Cyc. 1265; Note, Ann. Cas. 1912 C, 1013; Note, 39 L. R. A. 262; 5 Words & Phrases, p. 4060; 8 Words & Phrases, p. 7212.)

As to defendant Frank B. Gillmore, we conclude after a careful examination that there was no sub-

stantial evidence against him upon the merits of the action, and that as to him the demurrer was properly sustained. There was evidence that he knew his son was afflicted with a communicable disease, but the same evidence showed that he told the bride's father of the fact before the marriage took place, so he can not be regarded as having induced the wedding by concealing the fact. And we find no evidence of complicity on his part in the administering of morphine to the plaintiff. That he was willing to pay the expense of having her treated for the habit does not justify the inference that he was a party to its formation. In this state a husband is not liable for a tort committed by his wife, where he is not a participant. (*Norris v. Corkill,* 32 Kan. 409, 4 Pac. 862.)

The judgment is reversed as to Mary A. Gillmore and affirmed as to Frank B. Gillmore.

PORTER, J. (dissenting) : I adhere to the view expressed in the former opinion (*Gillmore v. Gillmore,* ante, p. 293, 137 Pac. 958) where it was said:

"It seems clear, therefore, that the plaintiff, many years before this action was brought, not only knew of the fact that the morphine habit had been fixed upon her, and how this had been accomplished, but also knew, at least in a general way, the nature and consequences of the habit." (p. 295.)

To my mind it seems incredible that during all the years from 1889 to 1910 the plaintiff could have been wholly under the control of the defendant or that she first fully realized in 1910 the wrongs practiced upon her, and first realized that she had been addicted to the use of morphine after she had been cured of the habit in 1910. In my opinion, these claims are wholly unsupported by evidence, and are contradicted by her own testimony.